**GEORGIA CASUALTY CO. v. HOAGE et al.**

No. 5492.

Court of Appeals of the District of Columbia.

Argued May 5, 1932.

Decided May 31, 1932.

George W. Offutt, Charles V. Imlay, and Ross H. Snyder, all of Washington, D. C., for appellant.

Leo A. Rover and John J. Wilson, both of Washington, D. C., for appellee Hoage.

W. Cameron Burton and A. H. Bell, both of Washington, D. C., for appellee Lydia M. Raines.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is a compensation case, and the appellant is the insurance carrier. The deputy commissioner awarded compensation under the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927 (USCA, title 33, chapter 18), made applicable in the District of Columbia by the Act of May 17, 1928 (45 Stat. 600, c. 612, § 1, D. C. Code, 1929, tit. 19, § 11 [33 USCA § 901 note]). The carrier brought a suit in the nature of an equity suit in the Supreme Court of the District, in which it prayed for a preliminary injunction to restrain the deputy commissioner from enforcing the award, and also "that the proceedings before said deputy commissioner be reviewed by this court as to the law therein contained, and as to the facts and conclusions of fact determinative of the jurisdiction of the said deputy commissioner to hear said case and make the award hereinbefore set forth." The trial court dismissed the bill. The sole question before us on this appeal is whether the relation of employer and employee existed.

When the case was heard in the lower court and when the briefs in this court were filed, the Supreme Court had not decided Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598, decided February 23, 1932, but in the argument before us it was insisted that the effect of the decision there is to require us to hold that the deputy commissioner is without jurisdiction here, and that this court should remand the case to the Supreme Court of the District with instructions to grant a trial de novo. We can find nothing in Crowell v. Benson, supra, to justify such action on our part. In that case, as in this, the employer denied that the relation of employer and employee existed between him and the claimant. The deputy commissioner found in favor of the claimant, and allowed compensation. The employer brought a proceeding under section 21.(b) to set aside the order. The district judge transferred the suit to the admiralty side of the court and held a trial de novo, refusing to consider upon any aspect of the case the record before the deputy commissioner. On the evidence introduced in court, he found that the relation of employer and employee did not exist, and entered a decree setting aside the compensation order. The Supreme Court affirmed the decree.

But here no request was made of the lower court for a trial de novo, nor was any new evidence offered on behalf of the carrier. The court below was asked to consider the question on the evidence adduced before the deputy commissioner, and did so, and no assignment of error in this respect was made on this appeal. Whatever right, therefore, appellant had to have the questions raised by his bill considered by the lower court on new and different evidence was lost by the procedure adopted, and this court must take the case as it finds it, and this involves our determining on the record before us whether the award made by the deputy commissioner was contrary to law for the reason that deceased at the time of his injury was a partner and not an employee, and his claim therefore not within the jurisdiction of the deputy commissioner.

The evidence shows that Matthews, whom the deputy commissioner found was

the employer, and Raines, the deceased, were formerly employed by a large awning company in Washington. Matthews, about 1925, started in business for himself and persuaded Raines to join him, promising that he would pay him as much as or more than he received in his former employment. Raines was a practical awning maker and did most of the outside work, but he also served as bookkeeper for the reason that he had a better education and was more fitted in that respect than Matthews. The business was begun under the name of C. R. Matthews & Co. Matthews furnished all the money for the purchase of supplies and accessories, and rented the building occupied by the company. The policy of insurance was issued in the name of C. R. Matthews, trading as C. R. Matthews & Co., though it also contained a statement to the effect that the same was a copartnership. Other than this, the principal evidence on which it is insisted there was a partnership is that the bank account was made subject to the check of Matthews and Raines jointly; that the weekly checks by which money was withdrawn from the bank were made out to cash and the stubs made to read "Selves, help, and materials," and that Matthews' and Raines' weekly withdrawals from the earnings varied according to the volume of business. The amount of compensation received by Raines ranged from $15 to $40 a week and averaged $30 a week. The total amount received by Raines in a year was in excess of the original estimated amount of the ordinary pay roll of the company. When money was borrowed from the bank, the promissory notes given in evidence of the same were signed by both Matthews and Raines. On the other hand, Matthews testified that the business was his and that Raines was an employee; that when there were profits he considered these as belonging to him; that Raines never put any money in the business, and that he, Matthews, conducted the business as his own and directed Raines in his work, and that on two or three occasions he had discharged him for being drunk, and at his request, when he was sober, had reinstated him; that Raines had never claimed to be a partner and had never questioned Matthews' right to discharge him; and that in preparing his income tax return he included Raines' pay as a part of the expenses of the business. Matthews' explanation of the discrepancies in the amount of weekly wages to Raines was that Raines was to receive as much as he had been receiving in his former employment, and that the weekly amounts were increased when the money was in hand to cover the reduced payments received during the lean weeks. In some of the weeks Raines received more than Matthews. Matthews explained this by saying that he owned his own home and Raines did not, and that therefore he frequently reduced his own withdrawal of money to provide Raines a wage around $30 a week.

This was a small business. Matthews was an uneducated man. He and Raines had worked together for the same employer and Raines possessed qualifications of a clerical nature which he did not. This seems to have been the motive actuating his appeal to Raines to come to him in his new adventure. There is nothing in the evidence which shows that Raines made any contribution to the business in the form of money or property, and there is equally nothing to show that there was ever a division of profits between them, and while in most instances they divided up each week the surplus earnings, Matthews explains this as nothing more than carrying out his agreement to average up Raines' wages in such a way that in the period of a year he would receive as much as or more than he had formerly received in his other employment. Matthews, on oath, stated that he was the sole owner of the business and in control of it; that Raines was his employee; that he might discharge him and had discharged him; and that at all times he controlled the work he was to do and the manner of doing it. His evidence in all these respects is corroborated by the only other permanent employee in the business.

■ A partnership is frequently described as a contract of two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, and to divide the profit and bear the loss in certain proportions. Farmers' Ins. Co. v. Ross, 29 Ohio St. 429, 431; Richardson v. Carlton, 109 Iowa, 515, 80 N. W. 532; Macomber v. Parker, 13 Pick. (30 Mass.) 175, 181; McClung v. Hughes, 5 Rand. (Va.) 453, 459. The test in most cases is that there must be a community of interest and a joining as principals in carrying on business for joint profit. Hughes v. Ewing, 162 Mo. 261, 62 S. W. 465. And so it has been held that a mere reception of a certain portion of the profits is insufficient. Campbell v. Dent, 54 Mo. 325, 334. Nor is an agreement by a merchant to pay an employee a certain salary and, in addition, a

certain percentage of the profits of the business an agreement of partnership. Stockman v. Michell, 109 Mich. 348, 67 N. W. 336. In other words, the test in such cases is that the profits must be shared as the result of a common adventure or enterprise, and not simply as a measure of compensation.

In the case at bar there is no direct evidence of partnership, and such evidence as there is grows wholly out of inferences from other facts. Placing the money of the business in bank to the joint account of Matthews and Raines would, without anything more, indicate joint ownership; but Matthews' explanation of this is that he was an ignorant man and knew no better and thought that was a desirable way to conduct the banking end of the business. The fact that nearly every week they divided equally the earnings would indicate a partnership; but Matthews' explanation of this is that the amount divided just about equalled on an average the wages he had agreed to pay Raines. On the contrary, his right to discharge Raines, on which he acted on two or three occasions without protest from Raines, is very strong evidence of the fact that there was no partnership. And when to this is added other indicia of ownership and control on the part of Matthews to which we have referred, we are constrained to think the greater weight of the evidence sustains the conclusion that Raines at the time he came to his death was an employee and not a partner.

The evidence shows that the premium paid to the carrier was based upon the amount of wages paid to employees. The policy in effect at the time of Raines' death was in effect the preceding year. The carrier had regularly made an annual audit of the business to determine the amount of wages paid in order to collect the correct amount of premium. This audit it had in its possession. If Raines' wages were not included in computing the premium, it had the opportunity of showing the fact, and the fact in this regard, if not controlling, would have been at least enlightening. It offered no such proof and made no effort to do so. It must be presumed, therefore, under the well-established rule, that such proof, if offered, would have been against its interests.

In the Crowell v. Benson Case, supra, the Supreme Court held the fact of employment an essential condition precedent to the right to make the claim, and the determination of the deputy commissioner as to this neither final nor conclusive. The result of this is to leave to the trial court the determination of the existence of this fact, which, the Supreme Court says, is fundamental. In the proceedings below the carrier might have made a new record. It did not, but certified up to that court for consideration the evidence taken before the deputy commissioner. The fact that the evidence so taken and so certified was taken in disregard of technical rules of procedure does not invalidate it or render it any the less entitled to consideration, and we have examined it as it was certified here to determine whether the compensation statute applies, and since, as we have seen, we agree with the lower court that the relation of master and servant did exist, and since there is no dispute as to the other essential facts, the decree of the lower court must be and is affirmed.

Affirmed.