Beota Rogers THIBODEAUX, Appellant,

v.

J. RAY McDERMOTT & CO., Inc., and the Travelers Insurance Company, Appellee.

J. RAY McDERMOTT & CO., Inc., and the Travelers Insurance Company, Cross-Appellant

v.

Beota Rogers THIBODEAUX, Cross-Appellee.

No. 17990.

United States Court of Appeals Fifth Circuit.

March 8, 1960.

Rehearing Denied April 19, 1960.

Phil Trice, Lafayette, La., Saloom & Trice, Lafayette, La., for appellant-cross-appellee.

Pat F. Bass, New Orleans, La., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., of counsel, for appellee-cross-appellant.

Before HUTCHESON, TUTTLE and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This is another of the now frequent intramural contests involving the ambiguous-amphibious maritime worker. In this diversity suit for damages, the survivors of the deceased employee asserted an alternating succession of claims to which the Employer[1] countered with like fluid defenses. The District Judge thought that in this case at least the matter had the simplicity of decision as a pure matter of law, not fact. Accordingly, he directed a verdict for the Employer on the claims for damages. We

---

1. The Employer was J. Ray McDermott & Co., Inc. Sued also as a defendant under the Louisiana Direct Action Statute, 15A LSA–R.S. 22:655, was the Travelers Insurance Company. The Employer corporation carried on its multiple activities in various divisions. The decedent worked in the Bayou Boeuf Fabricators Division. The Contracting Division, a separate division, had made an arrangement for transporation of the equipment to Venezuela and its discharge there. Segregation of activities into divisions does not, in our consideration of the case, alter the single, corporate entity of the Employer. It is relevant, however, on the question of the nature of the current and prospective duties of the decedent in the effort to make him out a "seaman."

agree with this. We agree as well with its collateral action of refusing the Employer's plea that a judgment be entered for death benefits under the Louisiana Compensation Act, LSA–R.S. 23:1021 et seq., on the ground that it, not the federal Longshoremen's and Harbor Worker's Compensation Act, applied.

The deceased Employee was a welder. He worked in the fabricating division of the Employer, a large industrial contracting concern. For about four days he, along with as many as forty or fifty others, was engaged in loading or securing the deck cargo on a flat-deck unmanned barge, the McDermott Tidelands No. 5—approximately 240 feet in length with a 70-foot beam. The cargo comprised large nondescript structural units which the Employer had fabricated for a customer's use in offshore oil operations in Venezuela. These structures, some as high as 100 feet, and other equipment covered most of the deck area which, quite naturally, was considerably cluttered. The absence or inadequacy of lifelines around the deck and rustic gangplanks and the insufficiency of lights added to the industrial hazards. The work being done by the Employee and other welders was welding padeyes, metal straps and the like to the deck or cargo to permit proper lashing and securing of the deck load for the ocean voyage. The cargo included several mobile house trailers. All of this welding and related work was completed about 2:00 o'clock in the morning. The Employee had last been seen working on the barge some time during the preceding two hours (i.

e., some time after midnight). Shortly after the men knocked off, the Employee was missed. No one saw him leave the barge or saw him ashore. None of his welding gear was ashore. It was soon feared that he had somehow fallen into the Bayou. The diver's search between the shore and the inboard side of the barge was negative. Early the following morning his body, fully clothed, was located by grappling hooks on the bottom of the Bayou about eighty feet from the outboard side of the barge.

Out of this incident grew this multi-claim diversity suit. The complaint asserted three theories for recovery of damages, not compensation. These claims were for a recovery of damages (1) under § 905 of the Longshoremen's Act for failure to secure payment of compensation [2] (2) as a seaman under the Jones Act, 46 U.S.C.A. § 688; and (3) for loss of consortium in the manner of Hitaffer v. Argonne.[3] Alternatively to these claims for damages—but only as a last resort—it set forth claim (4) for compensation under the Louisiana Workmen's Compensation Act.

### Claim (1).

#### For Damages Based on Longshoremen's Act.

The essence of this claim is, of course, that the employment and injury were such that the Longshoremen's Act was applicable. In other words, in contrast to Claims (2) as a seaman, this was bottomed on the proposition that a compensation act controlled, and that compensa-

---

**2.** After providing that Longshoremen's Act shall be the exclusive liability of the employer, § 905 spells out the sole exception:

"\* \* \* except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee." 33 U.S.C.A. § 905.

**3.** Hitaffer v. Argonne, 1950, 87 U.S.App. D.C. 57, 183 F.2d 811, 23 A.L.R.2d 1366, certiorari denied, 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624, overruled in Smither & Co., Inc. v. Coles, 1957, 100 U.S.App. D.C. 68, 242 F.2d 220, certiorari denied, 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1429.

tion act was the federal, not the state law.

The recovery sought, however, was not compensation death benefits as such. On the theory that the Employer failed "to secure payment of compensation," the plaintiffs exercised their statutory election provided in § 905 of the Longshoremen's Act to sue "for damages on account of such injury or death."

The District Court held that this claim for damages was unfounded since the record demonstrated conclusively that the Employer had secured payment of compensation. We agree.

■ The plaintiffs did not question the issuance or current maintenance of an approved compensation insurance policy as permitted under § 932(a)(1) & (b) and § 936. Indeed, the complaint affirmatively alleged the existence of the insurance and answers to interrogatories made it doubly sure. The whole theory was that there was a question of fact whether the printed notice required by § 934 was properly posted.[4] We need not discuss the evidence. Assuming that the notice posting was inadequate, this does not amount to a failure "to secure payment" required by § 905 as a condition to a damage suit. By the structure of the Act, the reference in § 905 to an employer who "fails to secure payment of compensation as required by this chapter" relates to the specific provision in § 932 which prescribes *how* and in *what* manner an employer shall comply with the obligation to secure payment of compensation.[5]

As an additional sanction to a § 905 damage suit, the Act imposes severe criminal (and civil) penalties against an employer and its corporate executives "who

fails to secure such compensation." 33 U.S.C.A. § 938(a) & (c). And to these sweeping sanctions is added the further one of the withdrawal of limitation of shipowner liability statutes (46 U.S.C.A. §§ 183–189) as to either (a) damages recoverable in a § 905 damage suit or (b) a proceeding for compensation and penalties. 33 U.S.C.A. § 948.

With this elaborate provision for effectual compliance with the Act and an actual financial ability to pay compensation awarded under it,—rights and obligations in no way dependent upon prior notices—there is no indication that Congress intended the failure to post, or adequately post, a notice to have, or to be visited with, such consequences.

Claim (2).

For Damages as a Jones Act Seaman.

■ Of course, there is nothing novel in the hope behind this claim. But in the final analysis what it is is the mistaken belief of so many that merely because the status of *who* is a seaman may be a question of fact, the principles summarized by us in Offshore Co. v. Robison, 5 Cir., 1959, 266 F.2d 769, 1959 A.M.C. 2049, perforce make every case one of fact for jury decision. Neither that opinion nor the cases it discussed made any such declaration.

Here the decedent fails on many scores. He was a regular shore worker. He lived, ate and slept at home. He was not attached or assigned to any particular vessel either as a member of a crew or otherwise. His customary duties were in welding and cutting on vessels under construction, conversion or outfitting. His relation to the barge McDermott No. 5

---

4. "Every employer who has secured compensation under the provisions of this chapter shall keep posted in a conspicuous place or places in and about his place or places of business typewritten or printed notices, in accordance with a form prescribed by the Secretary, stating that such employer has secured the payment of compensation * * *." 33 U.S.C.A. § 934.

5. 33 U.S.C.A. § 932 reads:
"(a) Every employer shall secure the payment of compensation under this chapter—(1) By insuring * * *; or (2) [By securing approval as a self insurer] to pay such compensation directly * *."

was purely transitory—both in point of work to be done and the time of its duration. He was to weld to enable proper securing of cargo for the intended ocean voyage. None of the workers engaged in loading and securing the cargo either were to, or could, make the voyage on this unmanned barge. There was no proof that the Employer expected to hire him to later fly down to Venezuela to perform services in connection with the discharge of the deck load or the assembly and installation ashore, or elsewhere, of the structures comprising its cargo. The most the evidence showed was that later on some men were flown down with perhaps the expectation that while engaged in discharging the barge and reassembling the structures they would live aboard the barge in the mobile trailers. But who these men were to be, how they were to be selected, what they were to do once they got there, how long they would remain, what relation there would be to the barge, or for what time, are all simply unknowns.

Clearly what the decedent was doing and had been doing for four days did not make him then a seaman. And these vague dreamy possibilities about what he might be, or do, in the future lacked sufficient legal buoyancy to float a seaman's status.

**Claim (3).**

**For Damages for Loss of Consortium.**

This is a claim by the surviving widow and posthumous child for loss of "society, security, companionship, love, guidance and financial support" of the decedent. This claim asserts that although decedent was not a seaman as in Claim (2) and even though the Longshoremen's Act applies but payment of compensation was properly secured so as to preclude a § 905 damage suit as in Claim (1), the surviving widow and the posthumous child have an independent, non-derivative right against the person, here the Employer, negligently causing death.

 To maintain such a theory for a wrongful death, two things must be established. First, there must be a right under local state law enforceable as a part of the admiralty and maritime law of the United States.[6] Second, the exclusive liability of the Longshoremen's Act must be overcome. As fascinating as would be an excursion into Louisiana law,[7] especially with the uncertainties in the overlay of federal constitutional questions, note 6, *supra,* we need not review the first. For as to the second, the Longshoremen's Act is, was intended to be and states that it is the exclusive measure of liability of an employer to a surviving widow and child.[8]

6. The sea of jurisprudence is hardly calm or placid on this point. There are undulating currents. Scarcely within a year of its pronouncement in Tungus v. Skovgaard, 1959, 358 U.S. 588, 79 S.Ct. 503, 523, 3 L.Ed.2d 524, 1959 A.M.C. 813, two Justices making up the Tungus majority now insist the Constitution puts a ceiling on state death actions. Another Justice restricts, if not retracts, his prior concurrence in Tungus by recognizing state death acts only "as remedially supplemented." The former dissenting minority join the two remaining Justices to make up a new majority "but solely under the compulsion of the Court's ruling in The Tungus v. Skovgaard," to assure that it "be applied evenhandedly." Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 347, 356, 4 L.Ed.2d 305, and Goett v. Union Carbide, 361 U.S. 340, 80 S.Ct. 357, 4 L.Ed.2d 341.

7. In a nut shell, this is the plaintiff's theory. Tracing it from the blood money of Wergild, the non-survival of actions, the Lord Campbell Acts, interpretations on them by common law jurisdiction courts, and the French concept of solatium, counsel profess to see in the development of the Louisiana Codal Articles 2315 and 2316 the creation of a new, separate right in the survivors in no way derivative of that of the deceased. They point to 16 Tulane L.Rev. 386 and 74 A.L.R. 11. The question of the concept of consortium in Louisiana (not the exclusive liability of the Longshoremen's Act) is the subject of a note to the Hitaffer case in 25 Tulane L.Rev. 293 (1950–1951).

8. 33 U.S.C.A. § 905 provides: "The liability of an employer * * * shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife,

On this score, all that the plaintiffs have is Hitaffer v. Argonne Co., 1950, 87 U.S.App.D.C. 57, 183 F.2d 811, 23 A.L.R. 2d 1366, certiorari denied 340 U.S. 852 71 S.Ct. 80, 95 L.Ed. 624, which did hold that exclusive is really not exclusive. But Hitaffer while launched and afloat never really got underway. Within five years its architects rejected it as unsuitable (hence inapplicable) to transport a death case.[9] And it was not long until it was abandoned and reversed.[10] And in its short life it never, on this point, attracted any support. On the contrary, every state and federal case rejected it as unsound.[11]

### Claim (4).

#### For Compensation Benefits Under the Louisiana Workmen's Compensation Act.

The plaintiffs' claim here was that if, but only if, the Court were to hold that the decedent was not a seaman under Claim (2) and the Longshoremen's Act did not apply as was essential to Claims (1) and (3), then the accidental injury was certainly compensable under the Louisiana Compensation Act. The Louisiana Act, in contrast to most compensation statutes, is asserted by a court suit without prior administrative proceedings. The District Court, in response to the specific successive motions of the Employer, held that (a) the Longshore-

men's Act applied, (b) it had been complied with and that (c) the decedent was not a seaman. Having so held, the Court took the position that the Louisiana Act did not apply, and that the Employer could not, at that stage, so urge. The Court thereupon denied the Employer's motion that a judgment be entered holding it liable for Louisiana compensation death benefits. The Employer appeals from that action. We affirm that action —but with some modification. But we do so without passing upon the availability of that contention to the Employer in this unique procedural setting after it had, in the best of common law tradition, fully and successfully exploited successive, alternative inconsistent contentions.

■ Of course, the plaintiffs do not seek, nor could they, a determination by us or the District Court that they are entitled to benefits under the Longshoremen's Act. Leonard v. Liberty Mutual Ins. Co., 3 Cir., 1959, 267 F.2d 421; London Guarantee & Accident Co. v. Rhoades, D.C.W.D.La.1941, 39 F.Supp. 589. That must await action by the Deputy Commissioner. This will include appropriate hearings if a controversion is filed to any claim, the issuance of an award and possible judicial review under § 921. What we are trying to make so very clear is that we do not decide the merits, and we make no intimation one way or the other on the merits.[12]

---

parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death * *." Thereafter follows the sole exception for failure to secure payment of compensation set forth in note 2, supra.

9. Brown v. Curtin & Johnson, Inc., 1955, 95 U.S.App.D.C. 234, 221 F.2d 106.

10. The Court expressly overruled Hitaffer in Smither & Co., Inc. v. Coles, 1957, 100 U.S.App.D.C. 68, 242 F.2d 220, certiorari denied, 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1429.

11. This is recognized in Smither, note 10, supra, where the Court, 242 F.2d 220, at pages 225, 226, lists the cases. See Note, 36 Cornell L.Q. 148, 151–156. The casual or comparative reference to Hitaffer in some of the early third party in-

demnity impleader cases such as Crawford v. Pope & Talbot, Inc., 3 Cir., 1953, 206 F.2d 784, 792, 1953 A.M.C. 1799; Valerio v. American President Lines, D.C.S.D.N.Y.1952, 112 F.Supp. 202; Considine v. Black, D.C.Mass.1958, 163 F. Supp. 109, 111, 1958 A.M.C. 1694; Coates v. Potomac Electric Power Co., D.C.D.C. 1951, 95 F.Supp. 779, provide no transfusion. Especially is this so in view of the theory of indemnity on the basis of an implied contract properly to perform the stevedoring subsequently developed in Ryan Stevedoring Co. v. Pan-Atlantic Steamship Co., 1956, 350 U.S. 124, 76 S. Ct. 232, 100 L.Ed. 133, 1956 A.M.C. 9, and Weyerhauser S.S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S. Ct. 438, 2 L.Ed.2d 491, 1958 A.M.C. 501.

12. The term "merits" is used in the broadest sense and comprehends any basis

In challenging the application of the Longshoremen's Act, the Employer, both here and below, did not question the occurrence of an accidental death in the course of employment. Nor did it raise the spectre of the nature of the work being performed insofar as that might give rise to the application of the state act for a maritime injury under the now somewhat hoary "maritime but local concern" doctrine or the later twilight zone concept and the options which some of the cases seem to hold open to the employee, not the employer. Rather, its contention, simply stated was that on the evidence adduced in this record "no one knows whether the decedent fell into Bayou Boeuf from the bank or wharf or from the barge." From that premise the brief then moves with like simple directness. "If he fell from the barge his death would be compensable under the Longshoremen's and Harbor Workers' Compensation Act.[13] If he fell from the bank or wharf his death would be compensable under the Louisiana Workmen's Compensation Act." [14]

Both of the decisions relied upon, notes 13 and 14, *supra,* consider the problem in terms of the historical standard of "the substance and consummation of the occurrence which gave rise to the cause of action." [15] That standard may well involve many variables and it may be that the ultimate decision can scarcely be made on such an easy mechanical, i. e., physical, basis.[16] But this is not the place to explore that. For that relates to the merits and is one of the decisive matters which the Deputy Commissioner will have to determine.

In that respect this case, at this spot, presents a new twist. It is not one in which a declaratory order [17] is sought, the effect of which will be either to direct the Deputy Commissioner to a particular result or at least one in anticipation of the proper decision. Nor is it one in which through injunction against state court proceedings there is an effort

---

available under the Longshoremen's Act for holding that in this case compensation death benefits should or should not be paid. It would include procedural matters, including timeliness and whether, for example, time begins to run from the date of the termination of this case under § 913 (d) which provides:

"913(d) Where recovery is denied to any person, in a suit brought at law or in admiralty to recover damages in respect of injury or death, on the ground that such person was an employee and that the defendant was an employer within the meaning of this chapter and that such employer had secured compensation to such employee under this chapter, the limitation of time prescribed in subdivision (a) of this section shall begin to run only from the date of termination of such suit."

13. By footnote the brief here cited Minnie v. Port Huron Terminal Co., 1935, 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1031, 1935 A.M.C. 879.

14. By footnote the brief here cited T. Smith & Sons v. Taylor, 1928, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520, 1928 A.M.C. 447.

15. T. Smith & Son v. Taylor, 1928, 276 U.S. 179, 182, 48 S.Ct. 228, 229, 72 L. Ed. 520. The expression was used sixty years earlier in Hough v. Western Transp. Co., 1866, 70 U.S. 20, 34, 18 L. Ed. 125, 128.

16. The historical development is well traced by Robinson on Admiralty, 1939, pages 55–90, especially at 76–88. Illustrating the complex problem where the injurious consequences initially commence while the worker is on land or a land structure (dock) followed by substantial damage from contact with the vessel followed by drowning is Thomson v. Bassett, D.C.W.D.Mich.1940, 36 F.Supp. 956. This affirmed a death award under the Longshoremen's Act, where the worker, on walking on the fender of the dock was pulled into the ship's side thereafter falling into the water where he drowned. Our prior case L'Hote v. Crowell, 5 Cir., 1931, 54 F.2d 212, reversed 1932, 286 U.S. 528, 52 S.Ct. 499, 76 L.Ed. 1270, per curiam without indication whether the reversal was on the basis of jurisdiction or on the conclusive nature of the Deputy Commissioner's finding on dependency likewise illustrates the complications as a worker moves or is banged about from land to ship, from non-maritime to maritime, from wharf to water.

17. See, e. g., Leonard v. Liberty Mutual Ins. Co., 3 Cir., 1959, 267 F.2d 421.

to obtain a ruling that the federal, not the state, act is exclusive.[18]

Rather, it is similar to the somewhat analogous situation in Pennsylvania R. Co. v. O'Rourke, 1953, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367, where the question of availability of FELA, 45 U.S.C.A. § 51 et seq., for an amphibious railroad worker turned on application of the Longshoremen's Act. The application of the Longshoremen's Act here is essential in determining whether recovery shall, or may, be accorded under the Louisiana Compensation Act. For the heart of all of these controversies is the Jensen [19] notion of supremacy of federal maritime rights.

■ Under it, the problem can be simply stated for this case. If the accidental injury-death was maritime, then the Longshoremen's Act alone may constitutionally apply. If it was non-maritime, then the Louisiana Act must apply. But before the Trial Judge could decree that the Louisiana Act controlled, he first had to find as a legal-fact that the accidental injury-death did not occur upon navigable waters, that is, that "the substance and consummation" of it took place upon land. He could not do this if the facts thus far shown either established or permitted the inference that the accidental injury took place on navigable waters.

Thus it is seen that by the very nature of this unique and ceaseless constitutional problem, the decision of the Trial Court on the jurisdictional-constitutional issue was provisional. Finding that the injury occurred on navigable waters, the Court could not yet decree recovery under the Longshoremen's Act for that has to be left to the ultimate decision in the judicial-administrative proceedings before the Deputy Commissioner. On the other hand, merely because it could not decree compensation benefits under the Longshoremen's Act pending in administrative proceedings, it was no more free to adjudge finally that compensation should be payable under the Louisiana Act. Because that very decision would have impinged on the administrative proceedings before the Deputy Commissioner. Indeed, it would be to make them unavailable or ineffectual.

■■ Of course, in that administrative proceeding it will be the initial responsibility of the Deputy Commissioner, subject to the right of judicial review, to determine whether the evidence as there offered warrants the inference [20] that the decedent had fallen from the barge, or from one of the rustic gangplanks,[21] into the water where his death came from drowning.[22]

18. This and the problem of 28 U.S.C.A. § 2283 is the subject of T. Smith & Son, Inc. v. Williams, 5 Cir., 1960, 275 F.2d 397.

19. Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086.

20. The extent to which the drawing of inferences even from undisputed "facts" is committed to the Deputy Commissioner, not the reviewing courts, is shown by O'Leary v. Brown-Pacific-Maxon, 1950, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483. Of the evidence and the Deputy Commission's finding the Court said. "It is, on the whole, consistent and credible. From it the Deputy Commissioner could rationally infer that [deceased] acted reasonably in attempting the rescue, and that his death may fairly be attributable to the risks of the employment. We do not mean that the evidence compelled this inference; we do not suggest that had the Deputy Commissioner decided against the claimant, a court would have been justified in distributing his conclusion. We hold only that on this record the decision of the District Court that the award should not be set aside should be sustained." 340 U.S. at page 508, 71 S.Ct. at page 472, 95 L.Ed. at page 487.

21. Injuries received while on or while getting off of a gangway or ship's ladder are now considered maritime and within the admiralty jurisdiction. The Admiral Peoples 1935, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633, 1935 A.M.C. 875. An injury sustained while going to or from a vessel and ashore has been held to be within the Longshoremen's Act. Ford v. Parker, D.C.D.Md.1943, 52 F.Supp. 98;

■ Whether the Deputy Commissioner will draw such inferences and make such findings we cannot know. Nor can we determine in advance whether the record as heard by him will or will not sustain them or contrary inferences which he might also draw. But since, on the evidence below, such inferences could be drawn, they would, if so drawn, make the case one for the exclusive application of the Longshoremen's Act. They would likewise exclude the Louisiana Act.

■ The result is that the District Court went too far in determining either as a matter of law or fact that the Louisiana Act did not apply because the Longshoremen's Act necessarily did. That part of the District Court's judgment must be vacated and the matter remanded. Since the plaintiffs were compelled under the prescription provisions of the Louisiana Compensation Act to bring the alternative claim within one year,[23] a federal court having apparent jurisdiction of that claim as a diversity suit has ample discretion to keep the matter alive pending final resolution of the troublesome questions of fact and law which inhere in the Jensen riddle. No harm will be done since the Employer candidly recognizes that the case is one for recovery of compensation death benefits under one of the two compensation acts.

Accordingly, the judgment as to Claims (1), (2) and (3) is affirmed and as to Claim (4) for compensation under the

Louisiana Act, the judgment is vacated and the cause remanded for further and other consistent proceedings.

Affirmed in part and vacated in part and remanded.

Caldaro v. Baltimore & Ohio R. Co., D.C. E.D.N.Y.1956, 166 F.Supp. 833; West v. Erie R. Co., D.C.S.D.N.Y.1958, 163 F. Supp. 879. This should not be surprising since injuries sustained upon a drydock or a marine railway are covered. Maryland Casualty Co. v. Lawson, 5 Cir., 101 F.2d 732; Avondale Marine Ways v. Henderson, 5 Cir., 1953, 201 F.2d 437, affirmed 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77.

22. See Lowe v. Central R. Co., 3 Cir., 1940, 113 F.2d 413, 415, 1940 A.M.C. 1446, where comparable factual circumstances were held to have justified the Deputy

Commissioner's inference that deceased had "fallen into the water from one of the floats rather than from the pier"; see also Schulz v. Pennsylvania R. Co., 1956, 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668, 1956, A.M.C. 737; Butler v. Whiteman, 1959, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed. 2d 754, 1959 A.M.C. 2566, reversing Harris v. Whiteman, 5 Cir., 243 F.2d 563; and Braen v. Phiffer Oil Transportation Co., Inc., 361 U.S. 129, 80 S.Ct. 247, 4 L.Ed.2d 191, involving aspects of unwitnessed or unexplained drownings, etc.

