Pamela WHITE, wife of/and Dennis White

v.

COOPER/T. SMITH CORP.; T. Smith & Sons, Inc.; and Home Indemnity Co.

Civ. A. No. 87–3507.

United States District Court, E.D. Louisiana.

Aug. 4, 1988.

---

Dennis J. Phayer, Glorioso, Welcher & Zaunbrecher, New Orleans, La., for plaintiffs.

Charles E. Lugenbuhl, Trial Atty., Stanley J. Cohn, Lugenbuhl, Burke, Wheaton, Peck & Rankin, New Orleans, La., for Cooper/T. Smith.

Wilton E. Bland III, T.A., Alan G. Brackett, Hebert, Mouledoux & Bland, New Orleans, La., for T. Smith & Sons, Inc., and Home Indem. Co.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on motion of defendant Cooper/T. Smith Corp. for partial summary judgment [1] and on motion of defendants T. Smith & Sons, Inc. and Home Indemnity Co. for summary judgment. Plaintiffs, Dennis and Pamela White, have opposed both motions. On consent of counsel, the two motions were submitted on briefs without oral argument. For the following reasons, the Court now GRANTS the first motion and DENIES the second.

---

1. While Cooper/T. Smith styled its motion as one for *partial* summary judgment, it is evident upon review of the motion and of the record that the motion seeks a dismissal of *all* claims against Cooper/T. Smith.

This is a § 905(b) action. Dennis White allegedly injured his left wrist twice, both times in the course of his longshoreman duties in similar mid-river mooring operations. The first motion concerns his first alleged injury (from slipping on an algae-covered buoy), while the second motion concerns his second alleged injury (from turning the steering wheel of a skiff with insufficient engine power). Both motions raise the same two issues: whether the alleged negligence constituted "vessel negligence" within the meaning of 33 U.S.C. § 905(b); and whether Pamela White may assert a loss-of-consortium claim for that accident. Resolution of the second issue turns wholly on resolution of the first. Below, the Court explains why the first accident is not vessel negligence whereas the second may be.

### I. *The Alleged Facts*

Dennis White was employed as a longshoreman, specifically, as a linesman, first for Cooper/T. Smith Corporation and then for T. Smith & Sons, Inc., both stevedoring companies. His duties involved securing and releasing lines from ocean-going vessels in the Port of New Orleans. Some of the mooring facilities were located on wharves, while others were located mid-stream on buoys in the Mississippi River.

He alleges he injured his left wrist twice during certain mid-stream mooring operations, first on July 31, 1984 and second on September 26, 1985. He and his wife are now suing his former employers and T. Smith's insurer under 33 U.S.C. § 905(b).[2] Below, the Court addresses each alleged accident in turn.

#### A. The First Alleged Accident

On July 31, 1984, while employed by Cooper/T. Smith, White and another lines-man were instructed to go to a mid-stream buoy in order to release certain mooring lines that were attached to the buoy. His employer provided the two an aluminum flat boat, the CAJUN, to use as transportation from the shore to the buoy and, according to his deposition and affidavit, from which to work once the two commenced their mooring operation. After arriving at the facility White got off the CAJUN to stand on the mooring buoy in order to release the mooring lines. While he was working on the buoy, he allegedly slipped on "the wet, slimy" surface of the exposed buoy and thereby injured his left wrist.

By affidavit, White asserts the following in support of his allegations of negligence:[3]

That he was required to get onto the buoy in order to effect the unmooring of the vessels tied thereto because his work crew was short one man, and that had a full three man work crew been available, the lines could have been released without anyone having to leave the boat;

That said unmooring operation is customarily performed without anyone having to leave the boat, although, on occasions, it is necessary to leave the boat and to actually get onto the buoy;

That said buoy was regularly and customarily encountered by Cooper mooring department employees in the course of performing mid-stream mooring operations, and that his supervisors in the mooring department are aware of such contacts by mooring department employees with said mid-stream buoys;

That his supervisors in the mooring department at no time ever warned him

---

**2.** Plaintiffs originally brought this action under the Jones Act. Defendants then moved for summary judgment on the ground that Mr. White was not a Jones Act seaman. *See Pizzitolo v. Electro–Coal Transfer Corp.*, 812 F.2d 977 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988). Meanwhile, plaintiffs moved to amend their complaint to delete the Jones Act claims and to replace them with § 905(b) claims. By minute entry of February 26, 1988, the Court granted defendants' motions

as well-founded and unopposed, dismissed plaintiffs' Jones Act claims with prejudice, and permitted plaintiffs to amend their complaint to add the § 905(b) claims.

**3.** Exh. B to Plaintiffs' Memorandum in Opposition to Motions for Summary Judgment [hereinafter Plaintiffs' Memo]; *see also* 12/29/87 deposition of Dennis White at 55–62, 134–38, *attached as* Exh. A to Cooper/T. Smith's motion.

of the existence of any dangers or hazardous conditions inherent in stepping onto and working upon such mid-stream buoys.

He thus concludes in his affidavit that "his supervisor was acting in the capacity of owner and operator of the flat boat used to ferry him and his fellow mooring department employee to the middle of the river."

### B. The Second Alleged Accident

On September 26, 1985, while employed by T. Smith & Sons, Inc., White was again instructed to go to another mid-stream facility, this time to secure mooring lines. His employer provided him and two other persons another flat boat, this time the DITTO.[4] During the mooring operation, he allegedly attempted to maneuver the DITTO in order to avoid the DITTO from flipping due to taut lines from the ocean-going vessel; while turning the steering wheel of the DITTO, he allegedly reinjured his left wrist.

White asserts that this second accident occurred because he was not provided a boat with sufficient engine power to maneuver properly for mooring operations involving the large lines used on ocean-going vessels. In support of this allegation, plaintiffs submit 28 daily boat tickets prepared throughout 1985 for the DITTO— though not one for September 26, 1985. Filled out by the DITTO's operators for each day it was used, the tickets provide

for various remarks concerning the DITTO's condition on that date; together, these particular tickets suggest that the DITTO may have had an ongoing problem with both its port and starboard engines in not starting or idling properly and in "killing" in the middle of a job.

## II.

The Court now addresses whether plaintiffs have made sufficient allegations, supported by competent evidence, of "vessel negligence" to defeat the two motions for summary judgment under F.R.Civ.P. 56(b). As with any summary judgment motion, the Court must resolve all genuine disputes of material fact against the moving parties (here, the defendants) and must construe every reasonable inference from those facts in favor of the parties opposing the motions (here, the plaintiffs).[5]

■ The Longshore and Harbor Workers' Compensation Act (LHWCA)[6] preserves to longshoreman their pre-existing rights under general maritime law to assert claims for injury caused by the "negligence of a vessel."[7] Following the 1972 amendments to the LHWCA, however, a person covered by the LHWCA may not assert a claim for unseaworthiness against a vessel owner.[8] Claims for vessel negligence, commonly called § 905(b) claims, are now generally understood to be governed by a standard of "ordinary, reasonable care

---

**4.** In his deposition, White apparently referred erroneously to the boat at issue as being the MARIAH. *See, e.g.,* Dep. at 78:20, *attached as* Exh. A to T. Smith's motion for summary judgment. Plaintiffs now agree that the boat at issue was not the MARIAH, but the DITTO. *See, e.g.,* Plaintiffs' Memo at 10–11 and Exh. C thereto; *see also* Second Amended Complaint, Record Document No. 33.

**5.** *E.g., AT & T Co. v. Delta Communications Corp.,* 590 F.2d 100, 101–02 (5th Cir.), *cert. denied sub nom. Delta Communications Corp. v. National Broadcasting Co.,* 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979); *see* F.R.Civ.P. 56(c).

**6.** 33 U.S.C. §§ 901–950.

**7.** *Parker v. South Louisiana Contractors, Inc.,* 537 F.2d 113, 117 (5th Cir.1976), *cert. denied,*

430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977); *see* LHWCA § 5(b), 33 U.S.C. § 905(b); *see also Richendollar v. Diamond M Drilling Co.,* 819 F.2d 124, 125 (5th Cir.) (en banc) ("when it enacted § 905(b), Congress did not create a new or broader cause of action in admiralty than that which previously existed"), *cert. denied,* ⸺ U.S. ⸺, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987).

**8.** *Tran v. Manitowoc Engineering Co.,* 767 F.2d 223, 228 (5th Cir.1985); *Castorina v. Lykes Brothers Steamship Co.,* 758 F.2d 1025, 1032 (5th Cir.), *cert. denied,* 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985); *Burks v. American River Transportation Co.,* 679 F.2d 69, 76 (5th Cir. Unit A 1982); *see Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 165, 101 S.Ct. 1614, 1621, 68 L.Ed.2d 1 (1981); LHWCA § 5(b), 33 U.S.C. § 905(b).

under the circumstances." [9] Because the duties under both a reasonable-care and an unseaworthiness standard often overlap to some degree, it is not necessarily inconsistent for a person to breach both standards [10] (even though he may be liable for breach of only one of these standards).

■ While the LHWCA generally forbids an employee covered by the LHWCA from suing his employer, other than for contribution under the LHWCA, for any injuries he sustains in the course and scope of his employment,[11] an exception exists when he is suing his employer for vessel negligence under § 905(b). Under this well-established dual-capacity doctrine, an employee may sue his employer "qua vessel" if he was injured as a result of the vessel's negligence.[12] In other words, an employer is not liable for *any* negligence, but *"only* for negligence in its 'owner' capacity."[13]

In the instant matter, the issue is not whether plaintiffs have made proper *allegations* of any negligence against them, but whether any such alleged negligence, if proved, constitutes "vessel negligence." As explained below, the Court holds that the allegations and evidence on the first incident, as a matter of law, do not constitute proper allegations and evidence of vessel negligence, but that their evidence on the second does, if consistent with the preponderance of the evidence proved at trial, establish vessel negligence. In other words, no genuine dispute of material fact exists as to the first incident, while such a dispute remains as to the second.

## A. The First Alleged Accident

■ For the first incident, plaintiffs in essence assert that Cooper/T. Smith knew or should have known it was unsafe for plaintiff to work standing on the buoy and that it knew or should have known plaintiff would be required to stand on the buoy if less than three men were sent out for the mooring operation. Thus, plaintiffs assert, Cooper/T. Smith knew or should have known that it was unsafe for less than three men to be sent out for the mooring operation.

The Court states the perhaps obvious: plaintiffs do not assert that anything was physically wrong with the CAJUN. Plaintiff did not allegedly hurt himself because of anything the CAJUN did or did not do. His complaint, instead, is simply that more people should have been sent out on the CAJUN—not to make the boat run safer or otherwise more navigable, but rather to help with the mooring job once the boat arrived at the buoy.

Plaintiffs cite the Court, and the Court has found, no cases that hold or even suggest that a failure of a stevedore to provide an adequately large crew for a mooring or other non-navigation operation constitutes "vessel negligence." It is not enough that a vessel be indirectly involved with an accident; the vessel's physical condition be a proximate cause of the accident. Because crewsize concerned the ability of the crew to perform its mooring operation and not the operation of the CAJUN, any negligence by Cooper/T. Smith for sending only two men out for the job must be considered

---

9. *Tran,* 767 F.2d at 228; *Castorina,* 758 F.2d at 1032; *see Scindia,* 451 U.S. at 167, 101 S.Ct. at 1622.

10. *Cf. Springborn v. American Commercial Barge Lines, Inc.,* 767 F.2d 89, 100 (5th Cir.1985) (concerning unseaworthiness and Jones Act negligence); *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 498, 91 S.Ct. 514, 517, 27 L.Ed.2d 562 (1971) (conditions of unseaworthiness may come "into being . . . by negligence").

Herein lies the flaw with T. Smith's position. Not surprisingly, it has cited no cases that suggest that an allegation of unseaworthiness precludes an allegation of negligence on the same facts.

11. LHWCA § 5(a), 33 U.S.C. § 905(a).

12. *Taylor v. Bunge Corp.,* 845 F.2d 1323, 1327–28 & n. 16 (5th Cir.1988); *Tran,* 767 F.2d at 226; *Smith v. M/V CAPTAIN FRED,* 546 F.2d 119 (5th Cir.1977) (holding that *Reed v. The YAKA,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), survived the 1972 LHWCA amendments); *see Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 531, 103 S.Ct. 2541, 2547, 76 L.Ed.2d 768 (1983).

13. *Kerr–McGee Corp. v. Ma–Ju Marine Services, Inc.,* 830 F.2d 1332, 1339 (5th Cir.1987) (quoting *Jones & Laughlin,* 462 U.S. at 531 n. 6, 103 S.Ct. at 2547 n. 6).

as negligence qua employer and not negligence qua vessel; if Cooper/T. Smith exposed plaintiff to any danger, it did so as employer, not as vessel owner. In short, plaintiffs err in their conclusion of law in their affidavit that Cooper/T. Smith was acting as vessel owner when it assigned just two men to the mooring operation.

■ A vessel owner has the duty to deliver to the longshoreman or harbor worker a safe ship with respect to its gear, equipment, tools, and work space.[14] But however broadly the terms "equipment" and "gear" may be interpreted, it would be unreasonable to hold that the buoy constituted part of the CAJUN's equipment or gear or that *any* large buoy could be an appurtenance to *any* vessel. The buoy was not brought aboard the CAJUN, nor was the CAJUN inoperable without or any way dependent on the buoy; instead, the buoy was merely the destination for which the CAJUN was used to reach. To hold otherwise because both the buoy and the boat were used to accomplish the mooring operation would lead to absurd results. Under such a test, wharves, fixed platforms, ocean-going vessels, and floating dry-docks, among other things that might come into contact with the CAJUN, would all be considered extensions of the CAJUN. The narrow § 905(b) exception would swallow up the general rule prohibiting an LHWCA employee from suing his employer.

Further, it cannot be properly argued, nor do plaintiffs argue, that the buoy itself may constitute a vessel, wholly apart from any connection with the CAJUN or any other boat. A structure does not qualify as a "vessel" under § 905(b) merely because it is located on water;[15] otherwise, everything from bridges to floating dry docks to fixed platforms to crab trap markers would, contrary to common sense and ordinary meaning, constitute vessels. A buoy is simply not something used, or capable of being used, as a means of transportation or navigation.[16] As a structure purposely fixed to remain in a single location, it represents the antithesis of a mode of transportation.[17]

In sum, the Court holds that, as a matter of law, plaintiffs have not made proper allegations of, or shown evidence tending to support a finding at trial of, vessel negligence for the July 1984 incident. Thus, the Court must dismiss Dennis White's claims against Cooper/T. Smith.

### B. The Second Alleged Accident

■ For the second incident, plaintiffs in essence assert that T. Smith knew or should have known that the DITTO was in unfit condition to operate safely on the mooring operation for it was used on September 14, 1985.

The Court states the perhaps obvious: plaintiffs this time do assert that something was physically wrong with the CAJUN. Plaintiff did allegedly hurt himself because T. Smith provided him with a vessel that it knew or should have known was inadequately powered for its intended purpose. Plaintiffs' allegations and factual evidence fall squarely within the duty the Supreme Court has defined that a vessel owner owes to an LHWCA employee.[18]

If the Court, as the factfinder at trial, finds that plaintiff's testimony in his deposition and the daily boat reports corroborate a preponderance of the evidence,[19]

---

**14.** *E.g., Casaceli v. Martech International, Inc.,* 774 F.2d 1322, 1326 (5th Cir.1985), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1516, 89 L.Ed.2d 914 (1986).

**15.** *See Richendollar v. Diamond M Drilling Co.,* 819 F.2d 124, 125 (5th Cir.) (en banc), *cert. denied,* —— U.S. ——, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987).

**16.** *See* 1 U.S.C. § 3 (general definition of "vessel"); *see also* LHWCA § 2(21), 33 U.S.C. § 902(21).

**17.** *See Cope v. Vallette Dry-Dock Co.,* 119 U.S. 625, 628, 7 S.Ct. 336, 337, 30 L.Ed. 501 (1887).

**18.** *See supra* note 8.

**19.** Plaintiffs' argument on the merits may be weakened by the absence of a daily boat report indicating problems on the specific date of the second alleged accident. Because the matter is presently before the Court on a summary judgment motion, however, the Court may not resolve at this time this dispute, which goes to the weight of plaintiffs' evidence and not to the admissibility of their evidence.

then plaintiffs will have established vessel negligence under § 905(b). Thus, because a genuine dispute of material fact exists as to the September 14, 1985 incident, the Court must hold that T. Smith and its insurer are not entitled to summary judgment against Dennis White.

### III. *Loss of Consortium*

The Court now addresses Mrs. White's loss-of-consortium claim under general maritime law. Following the holding in *Moragne*,[20] the Supreme Court held in *American Export Lines, Inc. v. Alvez*[21] that the spouse of a non-fatally injured LHWCA employee may assert a claim under general maritime law for loss-of-consortium. The Court did not, however, address the effect of the exclusivity provision in section 5(a) of the LHWCA.[22] This Court has found no post-*Alvez* case addressing the effect of § 905(a) on a spouse's general maritime claim for loss-of-consortium.

In a pre-*Moragne* case, the Fifth Circuit held that a spouse may not assert such a claim if the LHWCA employee's injury comes with the exclusivity provision of § 905.[23] The court stated that for a spouse to assert such a claim, she must establish two independent elements: first, that she have a right under general maritime law to assert such a claim; and second, that "the exclusive liability" of the LHWCA be overcome.[24] Because the court found that the spouse could in no event overcome the second hurdle, it did not address the first.[25] While *Alvez* makes it clear that a spouse would now satisfy the first element, nothing in *Alvez* or elsewhere suggests that the second element of the Fifth Circuit's two-prong test has lost its vitality. This Court now holds that it has not.

The Court now restates the rule. If an LHWCA employee can properly assert a § 905(b) claim for vessel negligence, then his spouse can properly assert a loss-of-consortium claim. But if an LHWCA employee cannot properly assert a § 905(b) claim, then his spouse is precluded from asserting her claim as well.

With this prelude, it must follow that Mrs. White may maintain her claim against T. Smith and its insurer for the September 1985 incident, but may not assert her claim against Cooper/T. Smith for the July 1984 incident. Accordingly, the Court grants Cooper/T. Smith summary judgment against Mrs. White as well, but denies T. Smith and its insurer summary judgment against her as well.

### IV. *Conclusion*

For these reasons, the Court GRANTS the motion of Cooper/T. Smith for summary judgment, but DENIES the motion of T. Smith and its insurer for summary judgment. Accordingly, the Court ORDERS that all claims against Cooper/T. Smith be dismissed with prejudice and that all claims against T. Smith and its insurer proceed to trial as scheduled.

---

**20.** *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

**21.** 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980).

**22.** LHWCA § 5(a), 33 U.S.C. § 905(a); *see Alvez*, 446 U.S. at 283 n. 10, 100 S.Ct. at 1678 n. 10.

**23.** *Thibodeaux v. J. Ray McDermott & Co.*, 276 F.2d 42, 47–48 (5th Cir.1960); *accord Murphy v. Woods Hole, Martha's Vineyard and Nantucket Steamship Authority*, 545 F.2d 235, 240 & n. 8 (1st Cir.1976); *Smither & Co. v. Coles*, 242 F.2d

220 (D.C.Cir.) (en banc), *cert. denied*, 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1429 (1957).

**24.** *Thibodeaux*, 276 F.2d at 47.

**25.** At the time of *Thibodeaux*, controlling Supreme Court law directed that courts look to local state law to determine if a spouse could assert a claim for loss of consortium. *Id.* at 47 & n. 6. *See generally Truehart v. Blandon*, 672 F.Supp. 929, 932 (E.D.La.1987) (discussing the history of spouses' claims under general maritime law).