**VALERIO et al. v. AMERICAN PRESIDENT LINES, Limited et al.**

United States District Court
S. D. New York.
Oct. 15, 1952.

Samuel P. Fensterstock, New York City, for libellants.

Dow & Symmers, New York City, by Edwin K. Reid, New York City, for respondent.

Galli & Locker, New York City, by Royce A. Wilson, New York City, for respondent-impleaded.

BONDY, District Judge.

This is a libel to recover damages for personal injuries alleged to have been suffered by libellants while discharging cargo from the S. S. Mount Mansfield operated and controlled by respondent American President Lines, Ltd. The libel alleges that the injuries were caused by the unseaworthiness of the vessel and the negligence of the respondent. Respondent impleaded the Nacirema Operating Co., libellants' employer at the time the alleged injuries were sustained.

In the afternoon of August 18, 1948, at Pier 10 Staten Island, N. Y., the impleaded-respondent Nacirema Operating Co., pursuant to its contract with respondent, discharged from the Mount Mansfield's upper 'tween-deck space of No. 1 hatch about 170 drums of cashew nut shell oil, 12 drums of chaulmoogra oil and 9 drums of citronella oil.

Libellants Kulakowski and Liquori and six other persons working in the upper 'tween-deck space of the No. 1 hatch rolled the drums to the square of the hatch and attached hooks to each draft consisting of six drums. Libellant Cupo was at the No. 1 hatch on the main deck. Upon signals given by him, the drafts were raised from the hold and placed on the dock. When the hooks were returned to the hatch, Cupo would grab them and assist in guiding them into the hatch. On the pier alongside the No. 1 hatch, libellant Valerio released the hooks from the drums and the drums were taken several hundred feet to the river end of the pier, where libellant Russo placed them in tiers. The oil had leaked around the drums on to the deck and the hooks. Within a few days of the unloading, all libellants developed dermatitis due to contact with cashew shell oil. They received medical treatment and were unable to work for some time. Kulakowski, the most seriously affected, received treatment including X-ray therapy twenty-five weeks. He suffered a rash on his legs, arms, face and ears, and an irritating itch.

When the case was called for trial, respondent settled libellants' claims against it for $4,000, divided as follows: Kulakowski $2,400 (less $280 paid on account of adjustment of the compensation lien); Cupo $500; Russo $500; Liquori $300; and Valerio $300.

Accordingly the issue before the court is whether the respondent is entitled to be indemnified by Nacirema.

Respondent's liability to libellants Kulakowski, Liquori and Cupo, who handled the drums or equipment on the ship, can not be questioned. In Anderson v. Lorentzen, 2 Cir., 1947, 160 F.2d 173, which likewise involved cashew oil, it was held that the owner of the ship was under a duty not only to provide libellants with a seaworthy ship upon which to work, but also to provide them as business invitees with a reasonably safe place to work and to warn them of the dangers of handling cashew nut shell liquid. This duty of the shipowner was held to be nondelegable and the shipowner was held liable to the longshoremen notwithstanding any concurrent duty on the part of a stevedoring company.

Valerio and Russo became infected while working on the dock. Valerio handled not only the drums but also the hooks which, whether supplied by the ship or contractor, constituted a part of the ship's discharging equipment which the ship was required to maintain seaworthy and the oil on which rendered the ship unseaworthy. Both were engaged in unloading cargo under a contract between the shipowner and the employer of the libellants which expressly provided for the sorting and stacking of the cargo man high on the pier upon the discharge of the vessel, and for tiering above man high upon the discharge at extra cost. Both were engaged in the maritime service of unloading the ship and were injured by contact with cargo known to be hazardous and requiring special precaution. See Strika v. Netherlands Ministry of Traffic, 2 Cir., 1950, 185 F.2d 555, 64 Harvard L.Rev. 996, 46 U.S.C.A. § 740, and accordingly the shipowner is also liable to them.

The record does not disclose any negligence on the part of any of the libellants other than Kulakowski. He was the only libellant who knew before the unloading began that the drums contained cashew

204

oil. He also knew of the existence of precautionary measures. In June, 1948, he had contracted dermatitis in a mild form and of short duration. However, it does not appear that he was aware of the serious consequences of handling the cargo without preventives. The court considers the respondent's settlement with Kulakowski reasonable, taking into consideration the nature of his injuries, the pain he suffered, the duration of his disability as well as the negligence on his part. The settlements with the other libellants are likewise considered reasonable.

Respondent claims that Nacirema breached its contract with respondent in failing to warn, to provide proper supervision, and furnish gloves and salves to its employees, and that this breach of contract was the primary cause of libellants' injuries, giving rise to the right of full indemnity from Nacirema for the loss which it sustained.

The contract expressly listed the equipment to be supplied by the ship and provided that Nacirema is to supply all other cargo handling gear and equipment needed for efficient stevedoring work, and to provide all necessary stevedoring labor and such stevedoring supervision as are needed for the proper and efficient conduct of the work.

The general superintendent of Nacirema testified that both parties considered warning and the furnishing of salves and gloves to be the job of Nacirema and not of respondent. The evidence further discloses that in reply to respondent's inquiry respecting precautionary measures taken by Nacirema in handling cashew oil drums, Nacirema on February 16, 1948 advised respondent that it was taking the following measures: determining the condition of the cashew oil cargo before unloading, warning employees to use extreme care in handling the drums, supplying them with gloves, and on request with a special salve which acts as a preventive, supplying them with strong soap and instructing them to wash their hands thoroughly, and transferring any man who knows that he is allergic to cashew oil to another gang. In conclusion the letter states: "We fully realize the hazard of contamination from handling cashew shell oil and if we have missed anything that would eliminate this danger we will appreciate any further advice on the subject." The same measures were outlined in instructions in a memorandum addressed by Nacirema to all its head foremen and superintendents on September 10, 1946.

■ This leaves no doubt that warning longshoremen and supplying preventives was the contractual duty of Nacirema, and that respondent had a right to rely on the performance by Nacirema of its obligations.

Nacirema maintains that respondent failed to prove Nacirema's breach of the duty to warn and supply preventives.

In a statement dated August 26, 1948, signed by Kulakowski for a representative of the Travelers Insurance Co., he stated that salve was given to him by one of his superiors prior to the handling of the drums. At the trial Kulakowski denied that he had made this statement. He testified he did not read the statement before signing it, that he thinks it was read to him but that he does not remember the part of the statement as to when the salve was issued, and that salve was not given to him until after he had discharged six to eight drafts. If so, he must have handled some cashew oil before salve was given to him, because there were only 3½ drafts of other oil discharged. Moreover he denied that gloves ever were given to him at any time.

The other libellants testified that they were never told anything respecting the manner of handling the drums. Cupo further testified that no one told him to use gloves or salve.

■ The court believes that no warning was given to any of the libellants prior to the discharge of the drums. This without more constituted a breach of Nacirema's duty to warn the longshoremen. The court also believes that no salve or gloves had been given to libellants before they began to handle the drums.

" * * * where a person has a nondelegable duty with respect to the condition

of his premises or vessel but has made a contract with another to perform that duty, and the other performs it negligently so as to make the owner liable to a person later injured, then, as a matter of implied contract, the owner is entitled to restitution from the other for reasonable damages paid the injured person." Barber S. S. Lines v. Quinn Bros., D.C., 104 F.Supp. 78, 80; Davis & Mattison v. American President Lines, D.C., 106 F.Supp. 729, 1952 A.M.C. 818; Lundberg v. Prudential Steamship Corp., D.C., 102 F.Supp. 115, 120; see American Mut. Liability Ins. Co. v. Matthews, 2 Cir., 182 F.2d 322, 323–324; Rich v. United States, 2 Cir., 177 F.2d 688, 691; Burris v. American Chicle Co., 2 Cir., 120 F.2d 218, 222. This is true even where the owner is negligent. Restatement, Restitution Sec. 95.

This case is distinguishable from those in which it was held that the shipowner and contractor were joint tort-feasors, or that the contractor neither expressly assumed the obligation to indemnify the shipowner, nor was under any obligation to the shipowner to discover negligence on the part of the shipowner. See Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318; Mikkelsen v. The Granville, D.C., 101 F.Supp. 566, affirmed 2 Cir., 191 F.2d 858, rehearing denied 2 Cir., 192 F.2d 809; Slattery v. Marra Bros., 2 Cir., 186 F.2d 134, 135, 138–139; American Mut. Liability Ins. Co. v. Matthews, supra, 182 F.2d at pages 323, 324.

On account of the dangerous cargo aboard, respondent was under a duty to warn and protect libellants, regardless of whether the leakage was due to any negligence of respondent. Nacirema with full knowledge of the existence of the danger assumed the obligation to discharge this duty in respondent's stead.

The fact that some drums leaked on arrival does not establish that the respondent was negligent either in accepting or in the manner in stowing them. But even if the leakage be deemed the result of respondent's negligence, Nacirema owed the respondent the expressly assumed obligation of discovering such negligence through inspection of the drums before the discharge and was under a duty to the shipowner to take specified measures intended to render respondent's negligence harmless. In this duty it failed. There is nothing in the record to show that all these measures would be ineffective to eliminate the danger.

Respondent accordingly is entitled to recover from Nacirema the amounts paid to libellants.

The Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901 et seq., 905, does not bar claims against the employer of the injured harbor worker asserted by third parties which are independent of the employee's right against his employer. Rich v. United States, supra; Lundberg v. Prudential Steamship Corp., supra. See Burris v. American Chicle Co., supra; Hitaffer v. Argonne Co., 87 U.S.App.D.C. 57, 183 F.2d 811, 23 A.L.R.2d 1366, certiorari denied 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624.

The foregoing shall constitute findings of fact and conclusions of law unless the parties desire more detailed findings in which event they may be submitted upon notice.