John FITZMAURICE

v.

CALMAR STEAMSHIP CORPORATION

v.

NACIREMA OPERATING COMPANY.

Civ. A. No. 28626.

United States District Court
E. D. Pennsylvania.

Sept. 14, 1961.

See also 26 F.R.D. 172.

Avram G. Adler, Philadelphia, Pa., for Fitzmaurice.

Thomas E. Byrne, Jr., Philadelphia, Pa., for Calmar S.S. Corp.

John B. Hannum, 3rd, Philadelphia, Pa., for Nacirema Operating Co.

VAN DUSEN, District Judge.

The Complaint in this case alleges that plaintiff sustained injuries due to the unseaworthy condition of defendant's ship and the negligence of defendant[1] (see pars. 6 & 7 of Document No. 1). At the time of his injury, plaintiff was a member of a gang of stevedores who were working on Pier 179, Philadelphia, during the unloading of bales of wood pulp from defendant's ship. The procedure used by the stevedores was as follows: the bales were removed from the ship by means of rope slings and placed at the edge of the pier; they were then moved a few feet by hand trucks and placed on skids; when the skids had twelve bales

[1]. At the time this Motion was filed, defendant Calmar Steamship Corporation was the only defendant in this case. A third-party defendant has subsequently been added to the action. In this Memorandum, when the word "defendant" is used, Calmar Steamship Corporation is the party to whom reference is made.

on them, they were moved by means of lumber carriers. Plaintiff's job was to pull the bales from the hand trucks and place them on the skid at which he was stationed. Since one of the bales had not been put on the skid straight, plaintiff tried to straighten it by placing his hook under one of the wires with which the bale was bound. The wire broke, causing him to fall and sustain injuries (see Document No. 14, pp. 6–18).

This case is now before the court on the Motion of defendant Calmar Steamship Corporation for Summary Judgment pursuant to F.R.Civ.P. rule 56, 28 U.S.C.A. (Document No. 13). Defendant Calmar alleges in its Motion that the deposition of plaintiff (Document No. 14) clearly indicates that it was not negligent, the ship not unseaworthy, and that it was in no way responsible for the accident. It also contends that the record clearly shows that plaintiff has no cause of action against it.

Defendant takes the position that state, not maritime, law governs this action and that the applicable state law bars the action. In the alternative, it contends that even if maritime law governs, it is entitled to full summary judgment, or, at least, to partial summary judgment, on the charge of unseaworthiness.

Whether or not plaintiff, a noncrew member, is entitled to be protected against unseaworthiness of the vessel depends on the nature of the work being performed. Pope & Talbot, Inc. v. Cordray, 9 Cir., 1958, 258 F.2d 214, 218. If plaintiff had been engaged in unloading activities on the ship at the time he was injured, there is no doubt that he would be entitled to the protection of the unseaworthiness doctrine, since loading and unloading are the work of the ship's service. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 96, 66 S.Ct. 872, 90 L.Ed. 1099. So, too, if he were engaged in loading or unloading activities on the pier and was injured because of an unseaworthy condition of the vessel, its gear, appliances or appurtenances, he would have standing to bring an action based on unseaworthiness because he would be a person to whom the shipowner owed a duty in this respect.[2] Strika v. Netherlands Ministry of Traffic, 2 Cir., 1950, 185 F.2d 555, 557–558, certiorari denied 1951, 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343; American Export Lines, Inc. v. Revel, 4 Cir., 1959, 266 F.2d 82, 86; Litwinowicz v. Weyerhaeuser Steamship Company, D.C.E.D.Pa.1959, 179 F.Supp. 812, 816; Hovland v. Fearnley & Eger, D.C.E.D.Pa.1952, 110 F. Supp. 657, 658; cf. Robillard v. A. L. Burbank & Co., Ltd., D.C.S.D.N.Y.1960, 186 F.Supp. 193; Hagans v. Ellerman and Bucknall Steamship Company, Ltd. v. Atlantic and Gulf Stevedores, Inc., D.C.E.D.Pa., 196 F.Supp. 593; Fisher v. United States Lines Co. et al., D.C. E.D.Pa., 198 F.Supp. 815. Although it may be, on the record now before the court, that plaintiff was not engaged in unloading at the time of the accident, this issue should be determined at the trial in view of the necessity of a trial on other issues in this case and of the lack of complete information in the record on this point. Cf. Pope & Talbot, Inc. v. Cordray, supra; Weigel v. The M V Belgrano, D.C.Or.1960, 189 F.Supp. 103; and Valerio v. American President Lines, D.C.S.D.N.Y.1952, 112 F.Supp. 202; cf. Reed v. The Yaka, D.C.E.D.Pa. 1960, 183 F.Supp. 69, 71–75.

Defendant contends that, notwithstanding the above, it is not liable because the vessel, its gear, appliances and appurtenances, did not cause the injury,

2. If the fact finder should determine that an unseaworthy stow had materially weakened the bands, it may well be that plaintiff would not be precluded from recovering under the doctrine of Palsgraf v. Long Island R. Co., 1928, 248 N.Y. 339, 162 N.E. 99, 101, 59 A.L.R. 1253, reargument denied 1928, 249 N.Y. 511, 164 N.E. 564 and § 281. Restatement of Torts, even though the bale had come to rest prior to the accident. The facts in this record are too meager to permit determination of the application or nonapplication of this and other legal principles ably argued by defendant.

as well as because plaintiff was not engaged in unloading the cargo at the time of the accident.

 Defendant's contention that the unseaworthiness doctrine is not applicable as a matter of law because the injury was not caused by the vessel, its gear, appurtenances or appliances, is rejected. Plaintiff has alleged that the injury occurred because the band around the bale was defective and that this defect was caused by improper stowage which weakened this baling wire band [see Document No. 15 and Document No. 26 (Deposition of Brennan), pp. 6, 15, 19 & 32].[3] If the cargo were improperly stowed, the vessel was not seaworthy. Gindville v. American-Hawaiian Steamship Company, 3 Cir., 1955, 224 F.2d 746, 747. If it is determined that the injury was caused by such an unseaworthy condition and that defendant owed plaintiff the protection afforded by the unseaworthiness doctrine, plaintiff might recover on this part of his claim. Summary judgment on the unseaworthiness issue will, therefore, be denied for the reasons stated above. This determination makes it unnecessary to discuss plaintiff's other contentions, which involve a factual determination as to whether the bands themselves were part of the unloading gear since they had to be used in conjunction with the longshoremen's hooks in order to complete the unloading operation safely (see, e. g., pp. 8–9 of Document No. 26).

 Also, the negligence charge may not be summarily dismissed at this stage of the proceedings. Although the physical handling of an ordinary bale or bundle is the clearest example of a detail within the special competence and peculiar responsibility of the stevedoring contractor, the testimony at the trial of this case might disclose that this was not an isolated bale, but that the bands around this bale and around other bales, stowed adjacent to lumber, being worked were defective and that defendant's agents caused and had reason to know of the defect but failed to warn plaintiff about it. Under those circumstances it is possible that a negligence claim could be upheld. Cf. Beard v. Ellerman Lines, Ltd., 3 Cir., 1961, 289 F.2d 201.

Since defendant has not shown that all material facts are undisputed and that it is entitled to summary judgment as a matter of law, its motion is denied. The certification contemplated by 28 U.S.C.A. § 1292(b) is not feasible in view of the factual issues presented by this record.

Plaintiff disputes defendant's contention that there are several cases pending in this court where the legal issues (particularly injury on a pier after the cargo has come to rest upon completion of unloading) presented by this case are also involved (pp. 6–7 of Document No. 29). Defendant is at liberty to apply to the Chief Judge for an advance listing of this case for pre-trial and trial in order to get these issues decided, at which time its counsel can submit his list of such pending cases. In the pre-trial memorandum, defendant may list the factual questions it wishes decided by the jury in order to establish its alleged legal principles.[4]

### Order

And Now, September 14, 1961, after consideration of the foregoing Motion, oral argument of February 20 and June 29, 1961,[5] the briefs of counsel (Docu-

3. The court has not overlooked the difficulties plaintiff may have on this point in view of footnote 9 on page 208 of Beard v. Ellerman Lines, Ltd., 3 Cir., 1961, 289 F.2d 201, 208, but the court expressly did not rule on this issue in that case.

4. Such questions will be helpful to the trial judge in the event that the legal issues cannot be decided on the evidence as it exists at the end of the plaintiff's case.

5. At the time of the oral argument on 2/20/61, the court gave leave to counsel for both parties to file additional information which the court said it would consider in deciding this Motion (see Document No. 19). Although no objection was made at that time, counsel for defendant later objected to this procedure and filed a Motion to Strike certain affi-

ments Nos. 27–31) and the record, It Is Ordered that Defendant's Motion for Summary Judgment (Document No. 13) is Denied.

davits filed by plaintiff under that leave of court (Document No. 18). The court then ordered that another hearing be held on the Motion for Summary Judgment

and denied the Motion to Strike (see Document No. 21). The second hearing was held on 6/29/61, pursuant to the request of counsel on 4/24/61.