**ATLANTIC STEVEDORING COMPANY, Inc., Employer, and Liberty Mutual Insurance Company, Insurance Carrier, Plaintiffs,**

v.

**William M. O'KEEFFE, as Deputy Commissioner, Bureau of Employees Compensation, United States Department of Labor, Defendant.**

Civ. A. No. 1334.

United States District Court
S. D. Georgia,
Savannah Division.

Aug. 13, 1963.

882

Corish, Smith & Remler, Savannah, Ga., Julian F. Corish, Savannah, Ga., counsel, for plaintiffs.

Reeves Lewis, Asst. U. S. Atty., Savannah, Ga., and Leavenworth Colby, Chief of the Admiralty and Shipping Section, U. S. Dept. of Justice, for the United States.

SCARLETT, District Judge.

### Part One

This case comes to this Court upon a complaint brought by the Plaintiffs seeking to enjoin the enforcement by the Defendant of a compensation award entered by him on May 2, 1962. Thereafter, Defendant filed his motion for Summary Judgment.

The case is presented here for decision on the entire transcript of the record of the hearing before the Defendant with the attached exhibits. There is, therefore, no dispute between the parties as to the facts. They differ sharply, however, on the legal conclusions arrived at by the Defendant from the record.

At the outset it should be pointed out that in the opinion of this Court the sole question here involved is whether the loss resulting from the fatal accident, hereinafter more described in detail, is compensable under the Federal Longshoremen's and Harbor Workers' Act or under the Workmen's Compensation Act of the State of Georgia. The Defendant has admitted in his arguments throughout this litigation that recovery for the loss sustained is validly provided by the State Act, but contends that the benefit of the Federal Act is likewise available to the Claimant.

The facts of the case are substantially as follows: William Curry, a longshoreman, was standing on the docks of a slip, built into the land at right angles from the Savannah River. The dock or wharf was constructed on, and attached to, the land. (Transcript pg. 18).

At the time of the accident, Curry and a co-worker were hooking on cargo consisting of rolls of paper, each measuring approximately forty-eight inches in diameter. These rolls of paper were being loaded by employees of Atlantic Stevedoring Co., Inc., from the dock into the hold of the ship by means of the ship's boom. The precise work which Curry (hereinafter referred to as decedent) was doing at the time of the accident was attaching a device, known as "Baltimore Dogs", equipment belonging to the stevedoring company, by which, when lifting pressure was applied, the rolls of paper were firmly held so that they could be hoisted over the ship's side and lowered into the ship's hold for stowage. (Transcript pgs. 4, 5, 10 and 19).

The rolls of paper being loaded as cargo had three metal bands binding them, "one around each end and a band through the core, which goes outside of the two bands that go around the circumference of the roll" (Transcript pgs. 6, 11–12). The particular roll of paper being loaded at the time of this accident did not have one of the circumference bands properly binding it, but instead, this band had broken loose but was still attached to the roll by the band going through the core. (Transcript pgs. 6, 9, 11–12). While this roll of paper was being lifted from the pier this loose circumference band caught the deceased employee by the leg, jerked his feet from under him, turned him upside down, and carried him up with the cargo. The burden winch operator, an employee of the stevedoring company, testified that he heard hollering and looked over the rail of the ship, saw the deceased employee's foot and stopped the winch, but at that time the deceased fell loose into the slip. (Transcript pg. 20).

There were no witnesses who actually saw the deceased's head hit either the dock or the vessel. (Transcript pgs. 11,

12, 13, 15, 16, 23, 24, 25). The coroner's report shows that the decedent suffered a fracture of the left temporal bone with hemorrhage to the brain, which rendered him unconscious, but that his death was due to drowning. His body was subsequently found in the slip alongside the dock, with the unbroken metal circumference band still hooked around his leg. (Transcript pg. 13).

Although the Defendant found that the decedent's head struck the side of the ship, there is no evidence in the transcript to support such a finding, and the Defendant in his brief presented in this Court, and in the oral arguments, concedes that the manner in which the decedent's head was injured was a matter of speculation. There is no dispute but that the cause of decedent's death was drowning.

The Defendant, based on the foregoing evidence, found that the case "comes within the purview of the said Longshoremen's and Harbor Workers' Compensation Act" and proceeded to award compensation to the claimants. To enjoin said award the Plaintiffs filed their complaint, and the Defendant has moved for a Summary Judgment.

### Part Two

The Defendant, represented by the Department of Justice, has strongly presented the following propositions, both by briefs and in the oral arguments of this case:

1. That a dock or wharf built adjacent to a navigable stream falls within the meaning of the expression " * * * upon the navigable waters of the United States * * * " as used in the Longshoremen's Act, 33 U.S.C. § 903(a).

2. That the jurisdiction of the Longshoremen's Act has been enlarged and extended by the effect of the Admiralty Extension Act, 46 U.S.C. § 740.

3. That there is a presumption of coverage provided by the Longshoremen's Act, 33 U.S.C. § 920(a).

4. That this case is one of doubtful jurisdiction and therefore falls within the theory of the so-called "twilight zone" cases.

I shall attempt to dispose of these contentions in the order in which they are set forth above:

 1. I cannot bring myself to accept the broad principle contended for by the government that a dock or wharf, constructed on, and attached to, the land, is a part of the navigable waters, simply because it is constructed on land adjacent to waters which may themselves be navigable.

The doctrine that a dock is a part or extension of the land has long been a fundamental part of our system of jurisprudence. It can be traced back as far as 1865 to the case of The Plymouth, (Hough v. Western Transportation Company), 3 Wall. 20; 70 U.S. 20; 18 L. Ed. 125. It has been reiterated as recently as 1962, 2 Am.Jur.2d Admiralty § 34, pg. 741.

Leading textbooks on the subject treat this principle as solidly established. See Benedict on Admiralty, Sixth Edition, Vol. 1 §§ 28, 29 and 128a.

The government, nevertheless, now contends that injuries and loss sustained as a result of accidents occurring on such docks or wharfs fall within the purview of the language of the Longshoremen's Act.

 It seems clear that Congress, under the Commerce clause of the Constitution, would have had the legislative authority to extend the provisions of the Longshoremen's Act so that it would have embraced all docks, wharfs or piers. The fact is that it did not do so. The pertinent language of the Act reads as follows:

"Compensation shall be payable under this Act in respect of disability or death of an employee, but *only if the disability or death results from an injury occurring upon the navigable waters of the United States* (including any dry dock) and if recovery for the disability or death through workmen's compensation

proceedings may not validly be provided by State law." (Italics mine). 33 U.S.C. § 903; F.C.A. 33 § 903(a).

There does not appear to be any ambiguity in this language. Certainly Congress knew the difference between "dock" and "dry dock". Did they not, by the use of the expression "including any dry dock", intend to exclude any other form of dock? Expressio unius est exclusio alterius.

Moreover, it would appear that Congress in defining the jurisdiction of the Longshoremen's Act recognized the clear distinction between "navigable waters" and "docks", otherwise there would have been no reason or necessity for including in the language of the Act the parenthetical phrase "including any dry dock".

The legislative intent is clearly set forth in the following quotation from the Senate Report on the Longshoremen's and Harbor Workers' Act:

> "The purpose of this bill is to provide for compensation, in the stead of liability, for a class of employees commonly known as 'longshoremen'. These men are mainly employed in loading, unloading, refitting, and repairing ships; *but it should be remarked that injuries occurring in loading or unloading are not covered unless they occur on the ship or between the wharf and the ship so as to bring them within the maritime jurisdiction of the United States.*" (Italics mine). S.Rep. No. 973, 69th Cong., 1st Sess., at pg. 16.

There is nothing in this case to bring it within the "dry dock" exception of the Act so that this Court would be bound by such recent decisions of the Court of Appeals for the Fifth Circuit, as Avondale Marine Ways, Inc. v. Henderson, 5 Cir., 201 F.2d 437, affirmed per curiam, 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77; and Holland v. Harrison Bros. Dry Dock and Repair Yards, Inc., 306 F.2d 369.

■ 2. But the government contends that the Admiralty Extension Act, supra, has enlarged the jurisdiction of the Longshoremen's Act. I find no such language in the Act nor has any been called to my attention. I am of the opinion that the Admiralty Extension Act was intended to extend the maritime jurisdiction to a class of torts from which the Federal Courts had theretofore been excluded. The pertinent portion of the Act reads as follows:

> "*The admiralty and maritime jurisdiction of the United States shall extend* to and include all cases of damage or injury, to person or property, *caused by a vessel on navigable water,* notwithstanding that such damage or injury be done or consummated on land. * * *" (Italics mine). June 19, 1948, c. 526, 62 Stat. 496; 46 U.S.C. § 740.

The Admiralty Extension Act modified the previous rule that a tort originating on water, but with injurious effect on land, on an extension of the land, or on a land structure, was not within admiralty jurisdiction. However, by the express terms of the Extension Act, the injury or damage must be "*caused by a vessel*". In the case *sub judice* we are not concerned with an injury "*caused by a vessel*", nor with an injury resulting from negligent acts of the vessel's personnel, nor unseaworthiness of the vessel. Conceding, but not admitting, the government's contention that the Admiralty Extension Act enlarged the jurisdiction of the Longshoremen's Act, such enlargement could only apply to an injury caused by a vessel with which we are not now concerned.

In Senate Report No. 1593, 80th Congress, 2nd Session, there appears the following statement regarding the purposes of the enactment of the Admiralty Extension Act:

> "*This legislation is not intended to affect* existing rights of seamen against their vessels or against private companies who operate Government owned vessels, or to affect *remedies which may exist against other parties involved by existing law in any appropriate forum.*" (Italics mine). U.S.Code Cong. Service 1948, p. 1899.

I find nothing to lead me to the conclusion that Congress intended by the Admiralty Extension Act to broaden and enlarge the jurisdiction of the Longshoremen's and Harbor Workers' Act, and I do not believe such jurisdiction can, or should be, extended by implication.

3. But the government says there is a presumption of coverage under Section 20 of the Longshoremen's Act. It is true that under the Act there is a presumption of coverage, "in the absence of substantial evidence to the contrary". See 33 U.S.C. § 920.

But I find that in the present case there is "substantial evidence to the contrary". Here the accident occurred on the dock, and I have heretofore decided that the dock is an extension of the land and not a part of the navigable waters of the United States.

In addition, I am inclined to the belief that there is a distinction between presumption of "coverage" and presumption of jurisdiction. Jurisdiction must be first established, and when once shown, then, and only then, does the coverage presumption become effective.

By way of illustrating my opinion as to the presumption set forth in the Statute I would like to point out hypothetically that, if the Deputy Commissioner assumed jurisdiction of a case over which, from the facts in the record, he obviously had no jurisdiction, no presumption in the statute could create or confer jurisdiction.

This Court is mindful of the fact that where, as here, the Deputy Commissioner finds that he has jurisdiction, such findings will be rejected only when there is apparent error. See: Cardillo v. Liberty Mutual Life Insurance Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028. But where, as here, I find that the locality of the accident was on the dock and that the dock is not a part of the navigable waters of the United States (as set forth in the Act) I have no choice but to reject the findings as to jurisdiction.

4. Lastly, the government urges that where the jurisdiction is doubtful, the case may, under the theory of the so-called twilight zone cases, be compensated either under the Federal or the State law.

But I do not believe that the twilight zone theory can be extended so as to afford an injured claimant the arbitrary choice of forums in which to seek redress. Rather, I prefer to regard the theory in the light of the recent (1962) language of the Court of Appeals for the Fifth Circuit in Holland v. Harrison Bros., supra, 306 F.2d at p. 372:

"This doctrine does not give every injured water front worker freedom to choose the more generous compensation statute. Where admiralty jurisdiction is clearly present the federal remedy is mandatory. * * And when there is a total absence of admiralty jurisdiction the worker must of course seek relief under the state law." (Italics mine).

No contention has ever been made in this case in the briefs, in the oral arguments, or on the record before me, that the ship, its personnel, or its tackle were responsible in any way for this accident. Having held that the language of the Admiralty Extension Act limits its application to damage or injury caused by a vessel, and having held that this accident occurred upon the dock, an extension of the land, I therefore find an absence of admiralty jurisdiction with respect to the accident out of which this litigation has arisen.

Conceding that there is an area for the application of the twilight theory, I still am of the opinion that this case does not fall within that category since the facts involved clearly remove it from the Federal Longshoremen's Act and relegate the claimant to seek his remedy under the State Compensation law.

The foregoing suffices, in my judgment, to dispose of the four contentions urged on behalf of the Defendant. Many cases have been cited in Defendant's able and comprehensive briefs. A review of these cases discloses, however, that while

many contain persuasive language, none of them are actually authorities on the particular question of jurisdiction here involved.

All of the cases cited by the government fall within four general categories. First is a class of cases of injuries to seaman arising under the Jones Act, 46 U.S.C. § 688; second, those cases which arise by virtue of the breach of the warranty of the seaworthiness of a vessel; third, an injury or damage caused by a vessel; and last, those cases involving injuries sustained aboard a vessel or by a workman falling from a vessel.

I have reviewed these cases, including the most recent decisions of the Supreme Court in Calbeck v. Travelers Insurance Company, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962); and Gutierrez v. Waterman S. S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963). Like all of the cases cited, these cases are distinguishable on their facts.

In Gutierrez, while the accident happened on a dock, the case was not a question of jurisdiction between the Federal and State compensation laws, but was based on the unseaworthiness of the vessel, which is an entirely distinct proposition from the one being here decided.

In Calbeck, the employee was working aboard a vessel "launched and floating in navigable waters". It is true that in the Calbeck case the Supreme Court indicated that the Federal Act could be applied even though the injury sustained might have been within the constitutional reach of the State Workmen's Compensation Statute. Nothing said in Calbeck, however, leads me to a different conclusion from that hereinabove indicated, and that is that the motion for Summary Judgment filed by the Defendant must be, and the same is, hereby denied.

## Part Three

This leaves the case before this Court on the pleadings and the record. The Plaintiffs contend that they are entitled to an injunction based on the record, and I agree with them.

Plaintiffs have consistently contended in the oral arguments and in the briefs submitted to this Court that this accident occurred upon the dock. I have so held. Plaintiffs contend that this case is controlled in that respect by the reasoning of the Supreme Court in Smith v. Taylor, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520, as reiterated and affirmed in Minnie v. Port Huron Terminal Co., 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631. Plaintiffs urge the following quotation from the Smith case as controlling on the questions of causation and locality of the accident:

> "The blow by the sling was what gave rise to the cause of action. It was given and took effect while deceased was upon the land (dock or pier). It was the sole, immediate and proximate cause of his death. * * * The substance and consummation of the occurrence which gave rise to the cause of action took place on land (the pier or dock)." (Italics and bracketed words mine).

So far as I have been able to determine, those doctrines of Smith v. Taylor, supra, as to causation and locality, have never been reversed and so far as I can determine, they have never been changed by legislation. I find the Smith case cited as an authority for the proposition that a dock is a part of the land and not within the admiralty jurisdiction of the United States in 2 Am.Jur.2d Admiralty § 34, p. 741 (1962).

I hold, therefore, that this accident occurred upon the dock; that the dock is a part of the land and not a part of the navigable waters of the United States; that the Longshoremen's and Harbor Workers' Act by its terms is limited to injuries occurring upon the navigable waters of the United States (including any dry dock); that the dock involved in this case was not a dry dock within the meaning of the Longshoremen's and Harbor Workers' Act; that the jurisdiction of the Longshoremen's Act was not enlarged by the Admiralty Extension Act of 1948 to include injuries occurring on docks or wharves; and that

the Defendant, the Deputy Commissioner, Bureau of Employees Compensation, United States Department of Labor, was without jurisdiction to hear and adjudicate this claim.

The Defendant, his agents and employees, are hereby enjoined from enforcing the award of May 2, 1962, which is declared to be invalid and is hereby set aside.