MICHIGAN MUTUAL LIABILITY COM-
PANY, Insurance Carrier, and Pittston
Stevedoring Corporation, Employer,
Plaintiffs,

v.

Phillip F. ARRIEN, Deputy Commission-
er Second Compensation District, Bu-
reau of Employees Compensation, Unit-
ed States Department of Labor, and Isi-
doro Parisi, Defendants.

United States District Court
S. D. New York.

Sept. 10, 1964.

Kirlin, Campbell & Keating, New York City, for plaintiffs; James B. Magnor and Alexander P. Gillen, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for the United States; Leavenworth Colby, Chief, Admiralty & Shipping Section, and Louis E. Greco, Atty. in Charge, Admiralty & Shipping Section, Dept. of Justice, of counsel.

Israel, Adler, Ronca & Gucciardo, New York City, for Isidoro Parisi; Angelo C. Gucciardo, New York City, of counsel.

PALMIERI, District Judge.

The plaintiffs move for summary judgment pursuant to Fed.R.Civ.P. 56. Their action seeks to permanently enjoin enforcement of a compensation award of the Deputy Commissioner. 33 U.S.C. § 921(b). The defendants cross-move for summary judgment.

### The Facts

There is no substantial dispute as to the facts giving rise to the compensation award.

On September 4, 1963, Isidoro Parisi, a longshoreman employed by the Pittston Stevedoring Corporation, was injured while discharging cargo from the S.S. Copiapo as a member of a longshoremen's gang. At the time of the accident, he was working on a "skid"—a removable platform approximately six feet by ten feet—which was attached to the dock. · It extended out over the water and towards the ship some twenty to twenty-five feet below the deck, its outer edge short of the side of the vessel. The skid was necessary because the stringpiece of the dock was too narrow. It did not extend far enough beyond the shed to permit men working there to walk around the pallets as they were unloaded from the ship.

The skid was attached to the pier by two overhead cables, extending from the superstructure of the pier to its offshore corners. The onshore side of the skid was secured to the stringpiece of the dock by three angle irons affixed to the stringpiece.

A safety net, called a "saveall", was strung between the skid and the vessel. It was designed to catch any cargo that might fall during the unloading operations. The bottom of the net was secured by means of three lines to the offshore side of the skid, while the top of the net was attached by three lines to cleats which were located on the deck of the vessel.

While Parisi was working on the skid, and while a draft of the ship's cargo was being lowered with the use of the ship's equipment, the pallet on which the cargo had been placed suddenly broke, causing the cargo to spill. Parisi was struck on the leg by a bronze case and knocked into the water. He sustained multiple injuries.

Parisi filed a claim for compensation under the Longshoremen's and Harbor Workers' Compensation Act (the Act), 33 U.S.C. § 901 et seq. The Deputy Commissioner found "the employee's injury was sustained upon the navigable waters of the United States and as the employer had other employees engaged in maritime employment upon the navigable waters of the United States, the employee's injury comes within the purview of the Longshoremen's and Harbor Workers' Compensation Act." He awarded Parisi $70 per week.[1]

### The Legal Background before the Act

This case once again poses the problem of the "ambiguous—amphibious" maritime worker. See Thibodeaux v. J. Ray McDermott & Co., 276 F.2d 42, 44 (5th Cir. 1960). The old adage that a page of history is worth a volume of logic is most apt.

---

1. The plaintiffs, meanwhile, had been paying $55 per week compensation under the New York Workmen's Compensation Act. Since the date of the award, June 24, 1964, they have made a lump sum payment to Parisi to cover the $15 per week Parisi had not theretofore received, and are now paying him at the rate of $70 per week.

Any discussion of the problems in this area must begin with the well known case of Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), a case which soon became entangled in serious difficulties of application. In that case the Supreme Court held that a state compensation act could not, constitutionally, be applied to an injury suffered upon a gangway running from a vessel on navigable waters to a dock. Such matters were held to be outside state cognizance and exclusively within federal maritime jurisdiction because of the need for uniformity which the constitutional grant of the admiralty power to the Federal Government was meant to assure. Calbeck v. Travelers Ins. Co., 370 U.S. 114, 117, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962).

The net result of the Jensen case was to deprive shore-based maritime workers of the benefits of workmen's compensation. State law could not apply and, at the time, no federal act had been adopted. Congress acted quickly to correct this state of affairs. Twice it adopted legislation to allow the application of state law, but each time the Supreme Court struck down the statute as an improper delegation to the states of congressional power. Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920); Washington v. W. C. Dawson & Co., 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646 (1924).

In the meantime, the Court itself began to conjure with the legal vacuum that had been created and to alleviate somewhat the plight of the longshoremen. It fashioned the "maritime but local" doctrine which provided that state compensation acts and wrongful death acts could validly extend to maritime activities which were of local as opposed to national concern. Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922); Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921); The Supreme Court, 1961 Term, 76 Harv.L.Rev. 75, 96 (1962); Gilmore & Black, Admiralty 346–7 (1957). As Justice Brennan said

in the recent Calbeck opinion, however, " * * * we must candidly acknowledge that the decisions between 1917 and 1926 produced no reliable determinant of valid state law coverage." Calbeck v. Travelers Ins. Co., supra, 370 U.S. at 118, 82 S.Ct. at 1199 (1962).

### Adoption of the Act

In 1927, with the law in this turbid state, Congress passed the Longshoremen's and Harbor Workers' Act, 33 U.S.C. § 901 et seq., the Act in question here. The prime motivation, of course, was to fulfill an acute need which Jensen had created. Protection of one form or another was now to be afforded to all longshoremen, or so it was hoped. Also, as the Calbeck opinion implies, there existed a desire for that ever-important, but frequently lacking, quality of certainty in the law.

The pertinent section, 33 U.S.C. § 903(a), reads as follows:

"Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law."

It will be noted that Congress still accorded the state law as large a role as possible. See Gilmore & Black, Admiralty 346 (1957).

### Early Interpretation of the Act

Although the protection which Congress desired for the injured longshoremen was successfully provided, the clarity which the statute was designed to supply was not. The section was construed as a codification of the dividing line between state and federal power drawn by Jensen and its progeny. "It proved difficult, however, to develop 'maritime but local' into a meaningful standard, with the result that each new fact situation in the area where the line between federal and state authority was

unclear could require extensive litigation to determine the proper source of compensation." The Supreme Court, 1961 Term, 76 Harv.L.Rev. 75, 96 (1962).

### The "Twilight Zone"

The confusion was such that the Court decided to adopt a different approach to the problem. In the case of Davis v. Department of Labor and Industries, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942), which involved a structural steel worker engaged in dismantling a drawbridge, Justice Black declared that the confusion was unjust to employees and employers alike. His solution was one "which has ever since astonished, bewildered and occasionally outraged the legal profession." Gilmore & Black, Admiralty 349 (1957).

Justice Black said:

"There is, in the light of the cases referred to, clearly a twilight zone in which the employees must have their rights determined case by case and in which particular facts and circumstances are vital elements. That zone includes persons such as the decedent who are, as a matter of actual administration, in fact protected under the state compensation act.

"Faced with this factual problem we must give great—indeed, presumptive—weight to the conclusions of the appropriate federal authorities and to the state statutes themselves." Davis v. Department of Labor and Industries, supra at 256 of 317 U.S., at 229 of 63 S.Ct.

In effect, coverage was presumed, whichever law—state or federal—was invoked below. A review of the post Davis cases reveals that invariably, whichever route the injured longshoreman chose, his recovery was upheld if his case fell within the twilight zone. The twilight zone was exceedingly broad. See, e. g., Avondale Marine Ways, Inc. v. Henderson, 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77 (1953); Baskin v. Industrial Acc. Comm'n, 338 U.S. 854, 70 S.Ct. 99, 94 L.Ed. 523 (1949); Bethlehem Steel Co. v. Moores, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417 (1948).

This use of a presumptive coverage in order to skirt the troublesome "maritime but local" question was successful in alleviating the problem of proper choice of jurisdiction for the injured worker. See The Supreme Court, 1961 Term, 76 Harv.L.Rev. 75, 96 (1962). The legal basis of the decision remained cloudy, however. Justice Frankfurter admitted that the solution contained a degree of "theoretic illogic". Davis v. Department of Labor and Industries, supra at 259 of 317 U.S., at 230 of 63 S.Ct. (concurring opinion). Chief Justice Qua of Massachusetts went so far as to say:

"Probably therefore our proper course is not to attempt to reason the matter through, and to reconcile previous authorities, or to preserve fine lines of distinction, but rather simply to recognize the futility of attempting to reason logically about 'illogic,' and that we should regard the Davis case as intended to be a revolutionary decision deemed necessary to escape an intolerable situation and as designed to include within a wide circle of doubt all waterfront cases involving aspects pertaining both to the land and to the sea where a reasonable argument can be made either way, even though a careful examination of numerous previous decisions might disclose an apparent weight of authority one way or the other." Moores's Case, 323 Mass. 162, 167, 80 N.E.2d 478, 481, aff'd per curiam sub nom. Bethlehem Steel Co. v. Moores, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417 (1949).

### Calbeck v. Travelers Ins. Co.

Then, in 1962, the Supreme Court took another step in an apparent attempt to liberalize and facilitate the administration of the maritime compensation laws. In the case of Calbeck v. Travelers Ins. Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), the claimant was injured while working upon a vessel afloat

on navigable waters but still under construction. The Court of Appeals for the Fifth Circuit had set aside an award of federal compensation, basing its decision on a line of cases which had established that injuries occurring on vessels under construction, though afloat, were compensable under state law. Since state law clearly applied, the Court of Appeals held the case was without the twilight zone, and hence not compensable under the federal statute. The Supreme Court reversed and held that the award under the Longshoremen's and Harbor Workers' Act was proper. The Court's ratio decidendi was not that the case was in the twilight zone, but rather that any injury occurring upon navigable waters was compensable under the federal act. Indeed, it is surprising that no express reference was made to the twilight zone concept worked out with such travail in the Davis case, especially since the Fifth Circuit had said in its opinion that this concept could not be ignored. Travelers Ins. Co. v. Calbeck, 293 F.2d 52, 55 (5th Cir. 1961). One wonders whether the Supreme Court did not, by its silence, condemn the twilight zone as a poor verbal device, approving all the while the underlying idea that state and federal compensation cases do overlap in certain instances. See infra p. 503.

The Calbeck opinion, in effect, sounded the death knell to many of the judicial intricacies which had developed since Jensen by construing the statute to cover the full scope of federal maritime jurisdiction as originally defined in Jensen. The Supreme Court, 1961 Term, 76 Harv.L.Rev. 75, 96 (1962). The words, "if recovery * * * may not validly be provided by State law"[2] were, for all intents and purposes, written out of the Act. Their original purport was abandoned. Justice Brennan said:

"We conclude that Congress used the phrase 'if recovery * * * may not validly be provided by State law'

in a sense consistent with the delineation of coverage as reaching injuries occurring on navigable waters. By that language Congress reiterated that the Act reached all those cases of injury to employees on navigable waters as to which Jensen, Knickerbocker and Dawson had rendered questionable the availability of a state compensation remedy. Congress brought under the coverage of the Act all such injuries whether or not a particular one was also within the constitutional reach of a state workmen's compensation law." Calbeck, supra, 370 U.S. at 126–127, 82 S.Ct. at 1203.

What is just as important as the actual holding in Calbeck is the general approach to the Act taken by the Court. No longer is the Act viewed as merely filling in the interstices around the shore line of the state acts, but rather as an affirmative exercise of admiralty jurisdiction. The Court quotes with approval the following statement:

"The elaborate provisions of the Act, viewed in the light of prior Congressional legislation as interpreted by the Supreme Court, leaves no room for doubt * * * that Congress intended to exercise to the fullest extent all the power and jurisdiction it had over the subject-matter. 370 U.S. p. 130, 82 S.Ct. p. 1205.

A substantially similar approach had been taken by Chief Judge Lumbard of the Second Circuit, sitting as a District Judge, in Caldaro v. Baltimore & Ohio R.R., 166 F.Supp. 833, 835–836 (E.D. N.Y.1956), which involved a stowman or freight handler who was injured on a section of a gangplank one end of which rested on carpenter's horses resting on the floor of a pier, and the other end of which rested on the pier itself:

"This is one of those cases which is on the very verge of the admiralty jurisdiction where a dividing line must of necessity be ar-

2. 33 U.S.C. § 903(a).

bitrarily drawn. It seems to me, however, that it does come within the admiralty jurisdiction and within the scope of the Longshoremen's and Harbor Workers' Compensation Act.

\* \* \* \* \* \*

"The phrase 'upon the navigable water', used in the Act, 33 U.S. C.A. § 903, and relied on in the O'Rourke case, is the same phrase which has often been used in defining the admiralty jurisdiction over torts. Neither The Admiral Peoples case nor other cases decided since have recognized any distinction between the test of admiralty jurisdiction over torts and the test of Longshoremen's Act coverage. E. g., Ford v. Parker, 52 F.Supp. 98 (D.Md. 1943); Thomson v. Bassett, 36 F.Supp. 956 (W.D.Mich. 1940). Such a distinction would be anomalous since it was the purpose of the Longshoremen's Act to provide a remedy throughout the area in which state compensation laws had been abrogated by the assertion of exclusive federal jurisdiction in admiralty."

### "Upon the Navigable Waters" is Equated with "Admiralty Jurisdiction"

It thus appears that "upon the navigable waters" is to be equated with "admiralty jurisdiction". Giving longshoremen the broadest possible coverage affords added clarity in the law for these men. Since the stevedoring companies, as a result of the "twilight zone" created by the Davis case, must, as a practical matter, insure under both state and federal acts, no great hardship is imposed upon them.

### The Implications of the Admiralty Extension Act

The Admiralty Extension Act enacted in 1948, some years after the Longshoremen's and Harbor Workers' Act, provides in part:

"The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." 46 U.S.C. § 740.

The Extension Act has been upheld as constitutional. United States v. Matson Nav. Co., 201 F.2d 610 (9th Cir. 1953). Needless to say, this Extension Act could be constitutional only if it was within the legislative power of Congress to adopt. That it was indicates that such accidents occurring on land but caused by vessels in navigable waters are comprehended by the phrase "upon navigable waters" as that phrase is now defined by the Supreme Court, inasmuch as the Court has indicated the phrase means the full jurisdiction of Congress under the admiralty clause. See pp. 500, 501 supra. Consequently it illuminates the words "upon the navigable waters" in this context even though the Extension Act was not an express amendment of the Longshoremen's Act.

The many cases cited by the Government upholding recoveries in damages by longshoremen for dockside injuries lend some support to its position here. At the outset it must be recognized that inasmuch as all the recoveries in these cases were sustained upon findings of unseaworthiness or negligence,[3] elements

3. Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963) (injury caused by slipping on loose beans spilled on the dock; claim based on unseaworthiness and negligence); Hagans v. Ellerman & Bucknall S.S. Co., 318 F.2d 563 (3d Cir. 1963) (injury caused by slipping on sand leaking from bagged cargo 100 feeet from ship; claim based on unseaworthiness); Thompson v. Calmar S.S. Corp., 216 F. Supp. 234 (E.D.Pa.1963) (injury caused by defective railroad car; recovery for unseaworthiness and negligence); Fitzmaurice v. Calmar S.S. Corp., 198 F. Supp. 304 (E.D.Pa.1961) (injury caused by cargo bale's breaking; claim based on unseaworthiness and negligence); Ro-

which are absent here and which are alien to a compensation award case, nevertheless it is very significant that longshoremen and others engaged in maritime employment were sought to be protected to the fullest extent of constitutional admiralty jurisdiction. The basis upon which the Extension Act and the Longshoremen's Act rest is the same —the admiralty jurisdiction of the United States; and both Acts must be understood to have expanded pari passu with it. Any departure from this view would compel the conclusion that the Longshoremen's Act was to be frozen to the admiralty jurisdiction of the United States as it was understood at the time of its enactment in 1927, a view rejected by the Supreme Court in the Calbeck case by clear implication.

The award, therefore, is sustainable on the ground that the accident occurred within the admiralty jurisdiction of the United States and "upon the navigable waters" of the United States.

### The Position of the Plaintiffs in Opposition to the Award

The position of the plaintiffs here, in seeking to set aside the award of the Deputy Commissioner, is one of almost disconcerting simplicity. Their argument is substantially what follows. The words "upon the navigable waters of the United States, (including any dry dock)," 33 U.S.C. § 903(a), mean exactly what they say and Parisi was in neither place. He was on a skid, an extension of a dock, a structure not specifically included in the statute and therefore one which must be deemed to have been intentionally excluded under time-honored principles of statutory construction. See Atlantic Stevedoring Co. v. O'Keeffe, 220 F.Supp. 881, 883–884 (S.D.Ga.1963), now pending on appeal to the Fifth Circuit. Moreover, the argument runs, a dock has, for a long time, been construed to be an extension of the land, and consequently not within the admiralty jurisdiction of the United States. The Plymouth (Hough v. Western Transp. Co.) 70 U.S. (3 Wall) 20, 18 L.Ed. 125 (1866); T. Smith & Son, Inc. v. Taylor, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520 (1928); Atlantic Stevedoring Co. v. O'Keeffe, supra 220 F.Supp. at 886. Additionally, Swanson v. Marra Bros., 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946), contains a dictum to the effect that injuries to longshoremen injured on a dock while assisting in a loading operation were not compensable under the Longshoremen's and Harbor Workers' Act. Denuded of legal background and history, the plaintiffs present the issues and their argument with the simplicity of a syllogism. If these authorities stood naked and alone, the annulment of the award in this case would seem to be inevitable. But the short answer to the plaintiffs' position is that the statutory language was not taken directly from the dictionary or from a few selected decisions. These words represented the result of a long and laborious effort in the many attempts to define and establish the basis for legal responsibility for injuries to maritime workers. The Supreme Court and the Congress played important roles in this extended effort, as the earlier portion of this opinion indicates. The ultimate aim of both bodies was the same—to afford these workers a basis for redress—a basis as clear and unequivocal as it was possible to devise within the purview of federal maritime jurisdiction. It follows, therefore, that the statutory language upon which the plaintiffs rely cannot be considered in vacuo. It must be understood against the compelling background of legislative efforts and judicial interpretations antecedent to the Act, and following its enactment in 1927.

billard v. A. L. Burbank & Co., 186 F. Supp. 193 (S.D.N.Y.1960) (injury caused by flying cargo; recovery for unseaworthiness); Litwinowicz v. Weyerhaeuser S.S. Corp., 179 F.Supp. 812 (E.D.Pa.1959) (injury on railroad car; claim based on unseaworthiness); Valerio v. American President Lines, 112 F.Supp. 202 (S.D.N.Y.1952) (injury caused by dangerous cargo; claim based on unseaworthiness and negligence); Hovland v. Fearnley & Eger, 110 F.Supp. 657 (E.D.Pa.1952) (injury caused by slipping on waste or water; claim based on negligence).

## The Invalidity of the

### Plaintiffs' Position

Against this background, the plaintiffs' contentions cannot stand. The plaintiffs' position in this case is so much an oversimplification of the issues that their suggested resolution by way of an annulment of the award lacks validity and persuasiveness. This case is clearly one where the recovery is sustainable under the most recent interpretation of the Act. It must be conceded that the facts lend themselves to reasonable arguments sustaining entitlement to relief under either state or federal law; but even assuming the case falls within this overlapping area the award here is legally sustainable. Calbeck v. Travelers Ins. Co., supra. That this overlapping presents uncertainties and complexities is undeniable (see dissenting opinion of Chief Justice Stone in Davis v. Department of Labor and Industries, supra), but the award cannot be annulled on this ground. The injured worker is not deprived of the benefits of the federal compensation law because he could, and indeed, in this instance, did obtain the benefits of the state compensation law. Calbeck v. Travelers Ins. Co., supra at p. 131 of 370 U.S., at p. 1196 of 82 S.Ct. Indeed, it was because the Fifth Circuit applied a rule of preclusion against the federal statute when it sustained the award under state law that the Supreme Court found error in its decision.[4]

### The Scope of Judicial Review

Apart from all that has been said, this Court has but a limited right of review of the award in this case. The appellate function of the courts "is exhausted when it becomes evident that the Deputy Commissioner's choice has substantial roots in the evidence and is not forbidden by the law". Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 478, 67 S.Ct. 801, 807, 91 L.Ed. 1028 (1947). "[T]he findings [of the Deputy Commissioner] are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole." O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951). These tests are met by the award in this case and its underlying record. In interpreting and applying the provisions of the Act, the Deputy Commissioner is not bound by traditional legal concepts, but is permitted to give the statutory terms broad applications in order to accomplish the remedial aims of the statute. Reed v. The Yaka, 373 U.S. 410, 415, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 506–507, 71 S.Ct. 470, 95 L.Ed. 483 (1951); Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 478, 481, 67 S.Ct. 801 (1947); Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 246, 62 S.Ct. 221 (1941); South Chicago Co. v. Bassett, 309 U.S. 251, 257–258, 60 S.Ct. 544, 84 L.Ed. 732 (1940). The findings and award of the Deputy Commissioner here were within his appropriate powers. The Deputy Commissioner's finding of fact that the accident was "upon the navigable waters" has substantial roots in the evidence. His decision, furthermore, is not forbidden by the law for the reasons set forth above.

Even more than being within these broad administrative powers, the award

---

4. The plaintiffs also have argued that Congress, since it expressly included in Section 903(a) the words "including any dry dock", obviously intended to exclude all other types of docks. "Expressio unius est exclusio alterius." Statutory interpretation cannot be simplified to such catch-all phrases. It is just as logical to argue that Congress obviously expected "docks" to be covered but feared that "dry docks" might be held, by the courts, to be without the Act and, therefore, felt it advisable to expressly mention the latter. Such speculations about congressional intent are always guesswork. The courts, rather, must rely for guidance upon the general setting of the statute and its evolution through judicial interpretations. In short, "Expressio unius est exclusio alterius" does not preclude a holding that this accident occurred "upon the navigable waters". Contra, Atlantic Stevedoring Co. v. O'Keeffe, 220 F.Supp. 881, 884 (S.D.Ga.1963).

**504**

here is entitled to a broad statutory presumption of validity [5]—a presumption of such importance that the agency's conclusion "that a case falls within the federal jurisdiction is therefore entitled to great weight and will be rejected only in cases of apparent error." Davis v. Department of Labor and Industries, supra at 256–257 of 317 U.S., at 229 of 63 S.Ct.

 As recently as the last term, the Supreme Court in Reed v. The Yaka, 373 U.S. 410, 415, 83 S.Ct. 1349, 1353, 10 L. Ed.2d 448 (1963) reiterated what it had said in Voris v. Eikel, 346 U.S. 328, 333, 74 S.Ct. 88, 98 L.Ed. 5 (1953), that the Act "must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results." It would be incompatible with the dominant intent of Congress to assist longshoremen, to distinguish between longshoremen injured under substantially the same circumstances, and to afford them different standards of relief. If Parisi, the injured longshoreman in this case, had been on the pallet when it broke, instead of just below it, there would be no question of his entitlement to the award. Any of Parisi's co-workers engaged in the same unloading work, but stationed at the ship's winch or at the ship's rail, would have been entitled, in case of injury, to the benefits of the federal statute. It would be anomalous and incongruous to compel Parisi to accept a different remedy. "All were subjected to the same danger. All were entitled to like treatment under law." Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 413, 74 S.Ct. 202, 98 L.Ed. 143 (1953), quoted

5. Title 33 U.S.C. § 920 provides, in part, as follows:
    "In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—
    "(a) That the claim comes within the provisions of this chapter."

6. In a different context, the Second Circuit recently rejected the rigid locus delicti notion that an airplane passenger should be subjected to the varying laws of different states through which he

with approval in Reed v. The Yaka, supra, 373 U.S. at 415, 83 S.Ct. 1349, at 1353. Thus, the result here avoids the harsh and incongruous result urged by the plaintiffs but which the Supreme Court has admonished us to avoid.[6]

It follows from all that has been said that the findings of the Deputy Commissioner and his award in favor of the claimant should remain undisturbed and must be confirmed. Accordingly, the defendants' motion for summary judgment is granted; the plaintiffs' motion for summary judgment is denied.

Submit proposed judgment on notice.

might move as a result of flight plans, weather or accident, and adopted the trend toward flexible and articulate selection of the laws governing multi-state transactions. Pearson v. Northeast Airlines, Inc., 309 F.2d 553, 561 n. 15 (2d Cir. 1962), cert. denied, 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720 (1963); see also Richards v. United States, 369 U.S. 1, 12–13, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); Coners, Re-Restating the Conflict of Laws: The Chapter on Contracts Twentieth Century Comparative and Conflicts Law, 349, 357–58 (1961).